**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:12-cv-179-MHT-WC |
| v. | ) | |
| | ) | |
| THE STATE OF ALABAMA and | ) | |
| BETH CHAPMAN, | ) | |
| SECRETARY OF STATE | ) | |
| OF ALABAMA, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED
STATES' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

Plaintiff United States of America ("United States"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, respectfully moves this Court for an order granting immediate injunctive relief against the State of Alabama and Beth Chapman, Secretary of State of the State of Alabama, in her official capacity, ("Defendants") to remedy violations of the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. 1973ff *et seq*., as amended by the Military and Overseas Voter Empowerment Act, Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act").  Absent an order of this Court, hundreds of Alabama's military and overseas voters ("UOCAVA voters") may face imminent disenfranchisement in Alabama's March 13, 2012 Federal primary election and its April 24, 2012 Federal runoff primary election, should a runoff election be necessary.

This action arises from Defendants' failure to transmit timely-requested absentee ballots to qualified UOCAVA voters at least 45 days prior to federal elections.  For the March 13, 2012 primary election, that deadline was January 28, 2012.  That failure violated UOCAVA, and risks depriving UOCAVA voters of necessary time to receive, mark, and return their ballots in time to be counted.  This is the second consecutive Federal election where the State failed to comply fully with UOCAVA.

Moreover, while the evidence demonstrates that the Defendants' current failures potentially affect hundreds of Alabama's UOCAVA voters from across the state, the precise scope of the harm is at this point unknown due to the Secretary of State's unwavering  refusal to provide the United States with any information as to the State's UOCAVA compliance.  And while the State has taken some last-minute measures aimed at curing its latest UOCAVA violations, those measures are inadequate.  Accordingly, this Court must act.

The United States satisfies all of the requirements for preliminary relief.  First, the undisputed facts establish a per se statutory violation and, thus, the United States is substantially likely to prevail on establishing a violation of UOCAVA.  Second, without preliminary injunctive relief, Alabama's UOCAVA voters are at risk for suffering the irreparable harm of disenfranchisement in imminent elections, as they may not have sufficient time to receive, mark, and return their ballots in time to be counted.  Third, the preliminary relief sought would impose no undue burden upon the Defendants, especially when balanced against the acute harm of disenfranchisement.  Finally, the public interest demands that Alabama's UOCAVA voters have a full and fair opportunity to have their ballots counted in the upcoming elections for Federal office.

Accordingly, to ensure that Alabama's UOCAVA voters are able to exercise their right to vote in the March 13, 2012 Federal primary election, the United States respectfully moves this Court for an order:  (1) requiring that the Defendants file with the United States and this Court, within two days of this Court's order, a report detailing the UOCAVA ballot activity in each Alabama county prior to the March 13, 2012, Federal primary election, including the number of UOCAVA ballots requested as of January 28, 2012, the date each timely-requested ballot was transmitted, and whether such transmission occurred by mail or electronically; (2) extending Alabama's absentee ballot receipt deadline to a date at least 45 days from the latest date on which timely-requested UOCAVA ballots were transmitted to provide any affected voters with a period of at least 45 days for roundtrip ballot transit; (3) requiring Defendants to take such steps as are necessary to afford affected UOCAVA voters who are eligible to participate in the March 13, 2012 primary, and the April 24 Federal primary runoff, if one is required, a reasonable opportunity to learn of this Court's order through targeted notice and publicity efforts;  (4) requiring Alabama to publicize the availability of electronic transmission of blank ballots, and where appropriate transmit blank ballots by email to UOCAVA voters who request such transmission;  (5) requiring where appropriate, the Defendants to make available to affected UOCAVA voters the option of returning their ballots for the Federal primary election by express mail at the State's expense; (6) extending if necessary the state law deadline for certifying the results of the election; and (7) requiring the Defendants to furnish to the United States and this Court all information necessary to determine if additional remedial action is required to ensure that UOCAVA voters have a full and fair opportunity to participate in the March 13, 2012, Federal primary election and the April 24, 2012 Federal primary runoff, should such a runoff election be necessary.[1]

---

[1] Alabama's administration of Federal primary runoff elections does not comply with UOCAVA's 45-day advance

## II.     STATUTORY BASIS FOR THIS ACTION

UOCAVA guarantees military and overseas voters the right "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. §1973ff-1.  In 2009, the MOVE Act amended UOCAVA to require that states transmit absentee ballots to UOCAVA voters at least 45 days before an election for Federal office to provide voters sufficient time to receive, mark, and return absentee ballots.[2]  42 U.S.C. § 1973ff-1(a)(8)(A) ("Each state shall . . . transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter . . . not later than 45 days before the election…").  Alabama is responsible for ensuring its UOCAVA compliance statewide.  42 U.S.C. §§ 1973ff-1 & 1973ff-6(6); *United States v. New York*, No. 1:10-cv-1214, 2012 WL 254263, at  *1 (N.D.N.Y. Jan. 27, 2012) ("New York is responsible for complying with UOCAVA and ensuring that validly-requested absentee ballots are sent to UOCAVA voters in accordance with its terms.").  The Attorney General is authorized to bring civil actions to enforce UOCAVA.  42 U.S.C. § 1973ff-4.

## III.    FACTS

### A.     <u>Background</u>

On March 13, 2012, Alabama will hold primary elections for candidates for Federal office, including for the seven (7) seats that comprise its delegation in the United States House of Representatives and for President.  In preparing for the 2012 Federal election cycle, the Department of Justice surveyed jurisdictions nationwide to determine state efforts to ensure

---

ballot transmission requirement.  *See* Compl. ¶¶ 13-18.  Accordingly, should a primary runoff election be necessary, Alabama's UOCAVA voters will again face imminent disenfranchisement absent an Order of this Court.

[2] UOCAVA requires that ballots requested by the 45th day prior to a Federal election must be transmitted by the 45th day before the election.  References in this memorandum to timely-requested ballots refer to ballots requested by January 28, 2012, the 45th day prior to the March 13, 2012 primary election.  Transmission of UOCAVA ballots requested after the 45th day is governed by 42 U.S.C. §1973ff-1(a)(8)(b).

UOCAVA compliance during 2012.  Obtaining this information from Defendants was particularly important given Alabama's failure to transmit absentee ballots by mail and electronically to UOCAVA voters 45 days in advance of the November 2, 2010, Federal general election, which was the first Federal election since Congress mandated the 45-day advance transmission requirement.  *See* Facsimile from Ala. Attorney General's Office to the U.S. Department of Justice, at 3 (Feb. 8, 2012), attached as Ex. A.

In a November 4, 2011 letter to the Alabama Secretary of State, the United States requested the opportunity to discuss Alabama's plans to ensure compliance with UOCAVA during the 2012 Federal elections.  *See* Letter from the U.S. Department of Justice to Alabama Secretary of State (Nov. 4, 2011), attached as Ex. B.  On January 9, 2012, the United States followed up on its November 2011 letter, requesting by telephone to schedule a telephonic conference call with state election officials to discuss the State's plans and preparation for UOCAVA compliance during the 2012 Federal elections.  The State declined the request to hold a telephone conference and refused to provide any information regarding the State's UOCAVA compliance efforts.

In light of the Defendants' unwillingness to provide even basic information as to its UOCAVA compliance efforts, and in light of the Defendants' failure to meet UOCAVA's 45-day advance transmission deadline for the 2010 Federal general election, the United States contacted some Alabama county officials directly to inquire about UOCAVA ballot activity for the March 2012 Federal primary.  Starting on February 6, 2012, the United States contacted by telephone approximately forty counties to inquire about UOCAVA ballot activity.  In response to those inquiries, officials from at least 25 counties stated that timely-requested UOCAVA ballots were transmitted *after* the January 28, 2012 advance transmission deadline.

Specifically, election officials in Baldwin, Bullock, Calhoun, Chilton, Coffee, Conecuh, Cullman, Dale, Dallas, Elmore, Etowah, Hale, Houston, Jefferson, Lauderdale, Limestone, Madison, Marshall, Mobile, Montgomery, Morgan, Pike, St. Clair, Sumpter, and Tuscaloosa Counties indicated that at least 287 (but as many as 533) military and overseas voters from those counties made valid requests for UOCAVA ballots as of January 28, 2012, but that their ballots were not transmitted until after that date. *See* Decl. of Jovalin Dedaj at ¶5, attached as Ex. C; Decl. of Doug Perez at ¶5, attached as Ex. D; Decl. of Paul Park at ¶5, attached as Ex. E; Decl. of Jasmine Phillips at ¶5, attached as Ex. F; Decl. of Roseann Romano at ¶5, attached as Ex. G; Decl. of Christina Rich at ¶5, attached as Ex. H; Decl. of April Medley ¶6, attached as Ex. I. Officials from Conecuh, Jefferson, Lauderdale, Madison, Morgan, and Limestone Counties indicated that timely-requested UOCAVA ballots were not transmitted until after February 5—at least 9 or more days after the January 28, 2012 transmission deadline. Ex. F at ¶6 (Phillips Decl.); Ex. G at ¶6 (Romano Decl.); Ex. E at ¶6 (Park Decl.); Ex. D at ¶6 (Perez Decl.). Officials from Chilton,[3] Lee, and Clarke Counties refused to provide any information at all, stating that any Department of Justice request for information as to UOCAVA ballots needed to be directed to the Secretary of State's office. Ex. C at ¶6 (Dedaj Decl.); Ex. E at ¶7 (Park Decl.). A Clarke County official stated that the Secretary of State's office had directed the County not to provide information about the County's UOCAVA activities to the United States and to refer the Department of Justice to the Secretary of State's office. *See* Decl. of T. Russell Nobile at ¶7, attached as Ex. J.

---

[3] In response to the Department's initial survey of Alabama counties, officials in Chilton County refused to provide Department staff information about UOCAVA ballot activity and explained that all such information requested should be referred to the Secretary of State's office. Ex. C at ¶6 (Dedaj Decl.)(summarizing February 7, 2012 call to Chilton County). However, in a subsequent call by a Department attorney, election officials in Chilton County admitted that UOCAVA ballots were not transmitted until February 2, 2012. Ex. I at ¶6 (Medley Decl.).

B.    __Defendants' Post-Violation Actions__

On February 7, 2012, one day after the United States began contacting local election officials, the Secretary of State adopted an emergency rule extending the UOCAVA ballot receipt deadline for the March 13, 2012 Federal primary election by eight days to March 21, 2012.[4]  This rule does not affect the State's primary election certification deadline of March 23, 2012.  *See* Ala. Code § 17-13-17 (2012).

On or about February 8, 2012, the Secretary of State published a notice on her office's official website conceding that UOCAVA ballots "were delayed" and advising voters of the extended ballot receipt deadline.  *See* Alabama Secretary of State, Elections Division Homepage, http://www.sos.state.al.us/Elections /Default.aspx (last visited Feb. 27, 2012), attached as Ex. K [hereinafter "Notice to UOCAVA Voters"].

On February 15, 2012, the United States wrote to counsel for the State requesting information about the Secretary's decision to extend the deadline.  In particular, the United States requested information regarding the scope and severity of the State's UOCAVA violation, including the number of voters affected, the counties involved, and the length of the delay.  Due to the exigent circumstances, the United States requested a response by February 17, 2012.  Letter from T. Russell Nobile, Trial Attorney, Voting Section, U.S. Dep't of Justice, to Winfield Sinclair, Ala. Assistant Attorney General (Feb. 15, 2012), attached as Ex. L.

Counsel for the Secretary of State responded on February 21, 2012.  *See* Letter from Jean Brown, Chief Legal Advisor to Ala. Sec'y of State, to T. Russell Nobile, Trial Attorney, Voting

---

[4] Prior to the extension, Alabama UOCAVA ballots for the 2012 Federal primary election needed to be received by election officials by March 13, 2012.  Ala. Code § 17-11-18 (2012).  On February 8, 2012, Defendant Secretary of State submitted the emergency rule adopting this extension to the United States Attorney General for administrative review under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  *See* Fax from Alabama Attorney General's Office to the Department of Justice, attached as Ex. A.  By law, the Section 5 review process does not include an evaluation for UOCAVA compliance.  28 C.F.R § 51.55 (2011).  The Attorney General precleared that submission pursuant to Section 5 on February 24, 2012.

Section, U.S. Dep't of Justice (Feb. 21, 2012), attached as Ex. M [hereinafter "Brown Letter"]. In her letter, counsel conceded the State had information "that not all Alabama counties have been able to transmit UOCAVA absentee ballots by the 45th day before the March 13, 2012 Primary Election," but she reiterated the State's long-standing refusal to provide any further information to the United States.  *Id*. at 2.  The letter also included a copy of the State's written plan for runoff elections, which the MOVE Act required states to prepare, effective November 2010.  42 U.S.C. §§ 1973ff-1(a)(9) & 1973ff-1 note.  This written plan consisted of an emergency rule passed by the Secretary of State on February 21, 2012 that merely reiterated existing provisions in Alabama law concerning runoff elections but fails to provide for transmission of ballots for a runoff election to Alabama's UOCAVA voters at least 45 days in advance of the election.

In light of these circumstances, on February 24, 2012 the United States notified Defendants of its intent seek judicial relief for these violations.  *See* Letter from Thomas E. Perez, Assistant Attorney General, Civil Rights Div., U.S. Dep't of Justice, to Luther Strange, Alabama Attorney General, and Beth Chapman, Alabama Secretary of State (Feb. 24, 2012), attached as Ex. P.

## IV.   ARGUMENT

### A.     <u>Preliminary Relief Should be Ordered Without Delay.</u>

Four factors govern whether a temporary restraining order or a preliminary injunction should issue:

(1)     whether there is a substantial likelihood of success on the merits;

(2)     whether the movant will suffer irreparable injury unless the injunction is issued;

(3)     whether the threatened injury to the movant outweighs whatever damage the

proposed injunction may cause the opposing party; and

(4)     whether granting the injunction is in the public interest.

*See, e.g., Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 238 F.3d 1300, 1308 (11th Cir. 2001); *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000).  As all four factors are met here, a temporary restraining order and preliminary injunction should issue.

**B.      The United States Is Substantially Likely to Succeed on the Merits.**

The evidence demonstrates that Defendants failed to transmit timely-requested ballots to UOCAVA voters at least 45 days before the March 23, 2012 Federal primary election, as required by UOCAVA.  42 U.S.C. § 1973ff-l; 42 U.S.C. 1973ff-1(a)(8)(A); *see* 156 CONG. REC. S4518 (daily ed. May 27, 2010) (discussing development of 45-day mailing requirement based upon evidence before Congress).  Indeed, the Secretary of State's Notice to UOCAVA Voters and her counsel's February 21, 2012 letter effectively admits as much.  Ex. K (Notice to UOCAVA Voters); Ex. M at 2 (Brown Letter).  Additionally, evidence gathered by the United States from around the State confirms the Defendants' failure to ensure that every UOCAVA voter who made a valid request for an absentee ballot by the 45th day before the election had that absentee ballot transmitted by January 28, 2012.  Evidence indicates that hundreds of timely-requested UOCAVA ballots across at least 25 counties were transmitted after the deadline, with some transmitted nine days or more after the January 28, 2012 deadline.  The Defendants' failure to timely transmit UOCAVA ballots violates UOCAVA.  42 U.S.C. 1973ff-1(a)(8)(A). Accordingly, the United States is highly likely to succeed on the merits.

**C.** **Alabama's UOCAVA Voters Will Suffer Irreparable Harm Absent**
**Immediate Injunctive Relief.**

Unless the Court takes immediate action to remedy fully the State's UOCAVA

violations, Alabama's UOCAVA voters, many of whom are members of the United States

Armed Forces deployed on missions and in harm's way are at serious risk of disenfranchisement.

The right to vote is "fundamental." *Bartlett v. Strickland*, 129 S. Ct. 1231, 1240 (2009); *see*

*Reynolds v. Sims*, 377 U.S. 533, 561 (1964). Denial or abridgement of that right constitutes

irreparable harm. *See Harris v. Graddick*, 593 F. Supp. 128, 135 (M.D. Ala. 1984) (granting

preliminary injunction to remedy violations of Section 2 of the Voting Rights Act); *Montano v.*

*Suffolk Cnty. Legislature*, 268 F. Supp. 2d 243, 260 (E.D.N.Y. 2003) ("An abridgement or

dilution of the right to vote constitutes irreparable harm."); *Dillard v. Crenshaw Cnty.*, 640 F.

Supp. 1347, 1363 (M.D. Ala. 1986). Immediate injunctive relief is necessary to ensure that

Alabama's UOCAVA voters are not disenfranchised in the 2012 Federal primary election.

The Secretary of State's decision to extend the UOCAVA ballot receipt deadline by eight

days is an inadequate remedy here. The evidence demonstrates that at least some timely-

requested UOCAVA ballots were transmitted after February 5, in other words nine days or more

after the January 28, 2012 deadline. *See* Ex. F at ¶6 (Phillips Decl.); Ex. G at ¶6 (Romano

Decl.); Ex. E at ¶6 (Park Decl.); Ex. D at ¶6 (Perez Decl.). Thus, the eight-day receipt deadline

extension does not ensure that all UOCAVA voters have a full 45-day window to receive, mark,

and return their ballots in time for counting, and a further extension to the ballot receipt deadline

may be necessary. Moreover, because the State refused to provide any information, and

admonished at least some counties not to provide any information to the United States, the

precise scope of the harm is still unknown. Other Alabama counties very well may have

transmitted UOCAVA ballots far later than is presently known, rendering the eight-day extension inadequate to address the harm to affected UOCAVA voters.

Additionally, the Secretary of State's choice to extend the ballot receipt deadline by eight days suggests little or no effort to tailor the remedy to the specific violations at issue.[5]  The Secretary of State adopted the same eight-day extension in 2010 to compensate for the State's failure to transmit all UOCAVA ballots 45 days prior to the Federal general election.  By seeking to apply the exact same remedy here, Defendants may seriously underestimate the relief necessary to protect Alabama's UOCAVA voters fully in this election.

Furthermore, the eight day extension may be inadequate because further relief may be warranted in this case.  For instance, depending on the full scope of the violation, it may be appropriate to offer affected voters who previously requested mailed ballots the opportunity to receive their ballots electronically to expedite their ballot receipt.  If some paper ballots have not yet been transmitted, it may be appropriate to require Alabama to transmit these ballots by express mail, as well as to offer express mail return for certain affected voters.  Additional efforts to publicize these remedies may also be necessary.  Finally, given Alabama's failure to comply with UOCAVA in two consecutive Federal elections, Court-ordered pre- and post-election reporting and meet-and-confer requirements are also appropriate, among other possible steps, to ensure the State's UOCAVA compliance in future elections.

### D.   Any Burden on Defendants is Minimal, and Is Far Outweighed by the Risk of Harm to Alabama's UOCAVA Voters.

The relief that the United States seeks is appropriately tailored to remedy Defendants' violation of Federal law.  The United States respectfully seeks an order requiring the State to

---

[5] The 45-day deadline for transmitting UOCAVA ballots was first required for the 2010 Federal general election. The March 13, 2012 Federal primary marks the second Alabama Federal election since the MOVE Act.  As such, the Defendants failed to comply with the 45-day deadline in both elections covered by that requirement.

provide all relevant facts related to its UOCAVA violations to this Court and the United States so

that an appropriate and complete remedy may be afforded the State's UOCAVA voters.  Based

on the facts gathered by the United States, that remedy ought to include extending Alabama's

receipt deadline to give all affected voters at least a 45-day window to receive, mark, and return

their ballots.  In addition, the State should undertake additional remedial efforts, including

generalized and targeted publicity efforts, to alert to the greatest extent possible all affected

voters of new receipt deadlines, and where appropriate to remediate late mailing, offering the

option to have blank ballots transmitted by electronic mail and the option of returning marked

ballots by express mail at no cost to the voter.  Courts have routinely ordered this kind of relief to

remedy UOCAVA violations in other cases.  *See United States v. New York*, No. 10-CV-1214,

(N.D.N.Y. Feb. 14, 2012) (requiring state to report detailed information about UOCAVA activity

to the United States and the court), attached as Ex. N; Consent Decree, *United States v. New*

*York*, No. 10-CV-1214, (N.D.N.Y. Oct. 19, 2010) (requiring among other things extensive

publicity efforts to notify affected UOCAVA voters of remedial efforts), attached as Ex. O; *see*

*also United States v. Cunningham*, No. 08-cv-709, 2009 WL 3350028, at *10 n.3 (E.D.V.A. Oct.

15, 2009) (citing many United States District Court cases where an extension of the ballot receipt

deadline had been entered as a remedy for a UOCAVA violation); *United States v. Wisconsin*,

No. 10-CV-518 (W.D. Wis. Sept. 14, 2010; entered Sept. 15, 2010) (ordering 17-day extension

of deadline).  Granting a temporary restraining order and preliminary injunction in this case will

impose minimal hardship on the Defendants.  To the extent the Defendants argue otherwise, such

burdens pale in comparison to the burdens borne by those Alabama's UOCAVA voters facing

imminent disenfranchisement.

E.        **The Public Interest Favors Immediate Relief.**

UOCAVA reflects Congress's determination that military and overseas voter

participation in Federal elections is a vital national interest.  *See United States v. New York*, No.

1:10-cv-1214, 2012 WL 254263, at *1 (Jan. 27, 2012) ("Nothing is more critical to a vibrant

democratic society than citizen participation in government through the act of voting.  It is

unconscionable to send men and women overseas to preserve our democracy while

simultaneously disenfranchising them while they are gone."); *Bush v. Hillsborough Cnty.*

*Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000) ("[Voting is] a sacred element of

the democratic process.  For our citizens overseas, voting by absentee ballot may be the only

practical means to exercise that right.  For the members of our military, the absentee ballot is a

cherished mechanism to voice their political opinion. . . . [It] should be provided no matter what

their location.").  The MOVE Act reaffirmed this core determination.  The relief requested herein

will advance the public interest by ensuring that Alabama's UOCAVA voters, many of whom

are members of the U.S. Armed Forces deployed abroad and in harm's way, can cast votes that

will be counted.[6]

---

[6] Moreover, the public has a clear interest in the enforcement of Federal statutes that protect constitutional rights, including voting rights.  *United States v. Raines*, 362 U.S. 17, 27 (1960) (reversing denial of preliminary injunction in voting rights case and holding that "there is the highest public interest in the due observance of all the constitutional guarantees, including those that bear the most directly on private rights"); *United States v. E. Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979) ("[T]he United States has an interest in enforcing Federal law that is independent of any claims of private citizens.  In the [voting rights] context the Supreme Court has characterized this as 'the highest public interest in the due observance of all constitutional guarantees.'" (quoting *Raines*, 362 U.S. at 27)); *see Herman v. S.C. Nat'l Bank*, 140 F.3d 1413 (11th Cir. 1998) (discussing *E. Baton Rouge Parish Sch. Bd.*, 594 F.2d at 58).  As this Court has recognized in a prior voting rights case, both irreparable harm and the public's interest in an injunction are presumed where the United States—rather than a private party—seeks injunctive relief pursuant to statute.  *United States v. Alabama*, No. 06-cv-392, 2006 WL 1598839, at *2 (M.D. Ala. 2006) ("[N]o showing of irreparable harm is necessary in an action for a statutory injunction. . . because where Congress has seen fit to act in a given area by enacting a statute, irreparable injury must be presumed in a statutory enforcement action.  Further, an examination of whether an injunction pursuant to a statute is in the public interest is unnecessary because Congress acts in the public's interest. " (citations and internal quotation marks omitted)).

V.      CONCLUSION

For the forgoing reasons, the Plaintiff respectfully requests that the Court grant the United States' motion for a Temporary Restraining Order and Preliminary Injunction and enter the attached proposed Order granting immediate relief for the violations of UOCAVA described herein.[7]

---

[7] Given the Defendants' refusal to provide information concerning the scope and severity its UOCAVA violations, the United States is not well-positioned to propose an order providing complete relief those violations.  Thus, the attached proposed order seeks to require the Defendants to provide county-specific information to the Court and the United States as to those counties that transmitted timely-requested UOCAVA ballots after the 45-day advance transmission deadline for the March 23, 2012 Federal primary election.  Once the Defendants provide complete information, the United States respectfully suggests it will then be best-positioned to propose an appropriate and complete remedy to the Court.

Respectfully submitted,

Date:  February 27, 2012

GEORGE L. BECK, JR.                      THOMAS E. PEREZ
United States Attorney                   Assistant Attorney General
Middle District of Alabama               Civil Rights Division


                                         _____/s/ T. Russell Nobile_____
STEPHEN M. DOYLE                         T. CHRISTIAN HERREN JR.
Assistant United States Attorney         RICHARD DELLHEIM
131 Clayton Street                       T. RUSSELL NOBILE
Montgomery, AL 36104                     RISA BERKOWER
Phone: (334) 223-7280                    Attorneys, Voting Section
Fax: (334) 223-7418                      Civil Rights Division
                                         U.S. Department of Justice
                                         950 Pennsylvania Avenue, N.W.
                                         NWB - 7122
                                         Washington, D.C. 20530
                                         Telephone:  (202) 307-1190
                                         Facsimile:   (202) 307-3961
                                         t.russell.nobile@usdoj.go