IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:12-cv-00179-MHT-WC |
| ) | |
| STATE OF ALABAMA and ) | |
| HONORABLE BETH CHAPMAN, ) | |
| Secretary of State, in her official capacity, ) | |
| ) | |
| Defendants. ) | |

**STATE DEFENDANTS' PRELIMINARY RESPONSE TO THE
COURT'S OPINION AND ORDER (Doc. 8)**

The State of Alabama and her Secretary of State, the Honorable Beth Chapman, sued in her official capacity, hereby respectfully offer this preliminary response to the Court's February 28, 2012 Opinion and Order (doc. 8).

**I.     Introduction**

This is a partial response to the Court's order granting a temporary restraining order and preliminary injunction. It is to provide the Court and the United States with information that is presently in the Secretary's custody and control and to inform the Court of additional efforts underway to comply with the order (the State Defendants will provide additional information within the Court's deadlines). Moreover, this response is to provide factual background that will demonstrate that the lawsuit and the injunction are unnecessary.

1

The State Defendants do not dispute that some local officials mailed UOCAVA ballots after January 28, 2011, the 45th day before the primary election. Several events came together to make it unavoidable. That does not mean, however, that the State Defendants were asleep at the wheel. In fact, the Secretary of State took substantial efforts to ensure that ballots went out on time, and when some did not, she developed and started implementing a plan to ensure that the rights of UOCAVA voters are protected.

The State Defendants are aware that the Court was presented a case with serious allegations and pending deadlines. It is clear that the Court sought a solution that gave proper respect to federalism. However, the State Defendants respectfully disagree with the order and at the proper occasion expect to move for dissolution of the injunction.

For now, though, our efforts are focused on running a fair election and complying with the Court's order. As set out herein, there is some information we have now, and additional information we will seek to collect, although we believe these efforts go far beyond what the statute, or even the Rules of Civil Procedure, require. All this is done, of course, without waiver of any objection that the State Defendants have to the United States' requests for information or the interim remedy crafted by the Court.

To the extent that the United States seeks to protect the rights of UOCAVA voters, the parties are of one accord. However, to the extent that the United States seeks to impose ongoing extra-statutory obligations on State officials, the State Defendants will vigorously defend the State's interests.

Those arguments are for later. At this time, the State Defendants provide this partial response:

**II.     Proceedings to Date**

This litigation was filed late in the afternoon of Friday, February 24, 2012. (Doc. 1). On the afternoon of Monday, February 27, 2012, counsel for the State Defendants were notified that the Court had set a telephone conference for 7:00 a.m. the next morning.  Just before 8:00 p.m. Monday night, counsel for the United States emailed copies of a filed motion for temporary restraining order and preliminary injunction, including supporting materials.  At 7:00 a.m. on Tuesday, February 28, 2012, the Court held a telephone conference, and later that day entered its Opinion and Order granting the motion for temporary restraining order and preliminary injunction (doc. 8; *id.* at 8).  The Opinion and Order require the State Defendants to produce voluminous information they do not have and to confer with the United States on appropriate remedial steps.

**III.    Statutory Overview**

The United States' complaint alleges that the State Defendants have failed to comply with the Uniformed and Overseas Citizens Absentee Voting Act of 1986, as amended by the Military and Overseas Voter Empowerment Act of 2009, codified at 42 U.S.C. § 1973ff – 42 U.S.C. § 1973ff-7.  The complaint is focused on the upcoming primary elections on March 13, 2012, and the potential primary runoff elections, which will be held on April 24, 2012, if needed.  The primary election is for federal, State, and county offices.

Pertinent here, UOCAVA requires that "a validly requested absentee ballot" be transmitted to a UOCAVA voter "not later than 45 days before the election" when the ballot request has been "received at least 45 days before an election for Federal office," unless the State has obtained a hardship waiver, which Alabama has not.  42 U.S.C. § 1973ff-1(a)(8)(A).  The

deadline for mailing UOCAVA ballots for the March 13, 2012 primary election was January 28, 2012.

It is undisputed that some counties in Alabama missed this deadline and that the Secretary of State has taken remedial measures to address this failing. Specifically, the Secretary of State has extended the deadline for receipt of UOCAVA ballots to 8 days after the normal deadline.[1] The Secretary is empowered to, and did, take State-wide corrective action to ensure that all UOCAVA voters are protected. The Secretary has also committed to "monitor[ing] the progress and tak[ing] further corrective action if she deems it necessary and appropriate" (doc. 1-4 at 4).

UOCAVA goes on to provide that if the voter requests an absentee ballot within the final 44 days leading up to a federal election, then the ballot is to be transmitted "in accordance with State law." 42 U.S.C. § 1973ff-1(a)(8)(B)(i). *"[I]f practicable and as determined appropriate by the State,"* the ballot should be sent "in a manner that expedites the transmission." 42 U.S.C. § 1973ff-1(a)(8)(B)(ii) (emphasis added). While the United States has not alleged any violation of this provision, it sought information from the State about compliance with this requirement in its proposed order, doc. 5-18 at 4, and this Court's Opinion and Order requires a county-specific report detailing, in part, "(b) the number of UOCAVA absentee ballots requested after January 28, 2012," doc. 8 at 9.

Finally, with respect to any primary runoff, UOCAVA provides that "if the State declares or otherwise holds a runoff election for federal office," then the State must "establish a written plan that provides absentee ballots are made available to [UOCAVA] voters in [a] manner that

---

[1]  The ballots were due on the date of the primary election, and are now due on March 21, 2012.

gives them *sufficient time* to vote in the runoff election." 42 U.S.C. § 1973ff-1(a)(9) (emphasis added). Ignoring Subsection (a)(9)'s specific focus on runoff elections and its inclusion of the language "sufficient time," the United States appears to assume that Subsection (a)(8)'s more general 45-day provision applies.[2] The State Defendants read Subsection (a)(9) as Congressional recognition that primary runoff elections are not traditionally held more than 45 days after the primary elections.

Indeed, Alabama's primary runoff elections used to be held three or four weeks after the primary elections until legislation was enacted in response to litigation brought by the United States, *United States v. Alabama*, Case No. 2:06-cv-00225-MEF-CSC. Act No. 2006-354 provided UOCAVA voters an enhanced opportunity to participate in the primary runoff election by pushing back the primary runoff until six weeks after the primary. It further afforded UOCAVA voters an extra week to return their ballots, providing that UOCAVA ballots would be timely if "postmarked as of the day of the second primary election [a.k.a., runoff election] and received by mail no later than noon seven days after the second primary election." Act No. 2006-354; *see also* Ala. Code § 17-9-51; Ala. Code § 17-11-18. Ballots of non-UOCAVA voters must be postmarked by the day before the election and received by noon on the day of the election.

The United States now asserts that even this extended schedule violates UOCAVA, and the Court has ordered "[c]ounsel for the parties [to] discuss appropriate measures to ensure that UOCAVA voters are afforded a full opportunity to participate in the State's April 24, 2012, federal runoff-primary election, if that election is held" (doc. 8 at 10-11). This portion of the

---

[2] For instance, paragraph 16 of the Complaint alleges: "Despite UOCAVA's 45-day advance ballot transmission requirement for all Federal elections, Alabama law provides less than 45 days between the Federal primary and primary runoff elections." Doc. 1 at ¶ 16

order is premature because (1) USDOJ is wrong to assume that the 45-day provision applies, (2) a primary runoff election may not be held for any federal races, and (3) any plan for how to ensure UOCAVA voters are allowed to participate in a federal primary runoff, should one occur, will depend on what relief might be entered with respect to the primary election.  Indeed, consideration of the primary runoff election constrains the Secretary's ability to extend indefinitely the time for the primary election ballots of UOCAVA voters to be received.

## IV.     Alabama's and Secretary Chapman's Commitment to UOCAVA Voters

During the February 28, 2012 conference call, counsel for the United States indicated that the Voting Section had a special concern about Alabama's compliance given the 2010 General Election, the first election for which the 45-day requirement was in effect.  Many States struggled in 2010.  Attached hereto as Exhibit A is USDOJ's 2010 Annual Report to Congress on UOCAVA compliance, without attachments.  USDOJ reported that it denied hardship waivers to Alaska, Colorado, the District of Columbia, Hawaii, the U.S. Virgin Islands, and Wisconsin, and then authorized suit against these jurisdictions to ensure compliance; a lawsuit was filed against Wisconsin, accompanied by a consent decree, and the other jurisdictions agreed to out-of-court resolutions. USDOJ also sued New York for failing to comply with the terms of a waiver which it had been granted.  In addition, USDOJ filed suit against Guam, Illinois and New Mexico, and negotiated agreements with Kansas, Mississippi, Nevada and North Dakota. There was no suit against Alabama.

The point of this discussion is not that non-compliance should be accepted as the norm, but that full compliance is a difficult task and Alabama was hardly alone in encountering difficulties in 2010.  In fact, Alabama and Secretary Chapman have a demonstrated commitment to UOCAVA voters.

### *Prior Advocacy On Behalf of Military and Overseas Voters*

Ensuring that military and overseas voters' ballots are counted has been a top priority for Beth Chapman even before she became Secretary of State. While serving as State Auditor, she began working with the Alabama Legislature to enact laws that would make it easier for UOCAVA voters' ballots to be counted.

Upon taking office as Secretary of State in 2007, Secretary Chapman created a website devoted to providing military and overseas voters access to voting information. She also hosted a conference devoted to the issue of improving military and overseas voters' access to ballots. Among the featured speakers at this conference were Major General Mike Sumrall, Assistant to the Chairman of the Joint Chiefs of Staff for National Guard matters, and USDOJ attorney Rebecca Wertz.

In 2008 Secretary Chapman successfully requested that Governor Riley sign an executive order establishing a Military and Overseas Voting Task Force, which she chaired. That same year, Alabama was the only State in the nation to organize a meeting in which the only three vendors in the world that performed internet voting provided demonstrations of their capabilities.

Secretary Chapman, who currently serves as the President of the National Association of Secretaries of State, was chosen to testify as a witness in a Congressional hearing on military and overseas voting. She has also worked closely with the Federal Voting Assistance Program, the Pew Charitable Trusts, and the Overseas Vote Foundation to see that UOCAVA voters' ballots arrive in time to be counted.

### *2010 Election*

During the 2010 General Election cycle, Secretary Chapman learned that there had been a delay in some counties in transmitting federal ballots no later than 45 days before the election.

To ensure that UOCAVA voters had sufficient time to receive and return their ballots, Secretary Chapman implemented an emergency rule that is identical to the one she has implemented for the 2012 primary election. She extended the time for receiving and counting these voted ballots, and she continuously monitored whether and when voted ballots had been returned to the county elections offices. These measures proved to be an effective way of ensuring that any UOCAVA voters whose ballots were not transmitted by the 45th day before the election had their votes counted. USDOJ did not challenge these remedial measures.

*2012 Election*

After the 2010 General Election and in light of the upcoming 2012 elections, the Secretary of State took additional steps to facilitate compliance with UOCAVA. In 2011 Secretary Chapman was instrumental in getting the Alabama Legislature to enact Act No. 2011-619. Among other things, this Act allows UOCAVA voters the additional means of returning voted ballots by commercial ground or air carrier. Before Act No. 2011-619, UOCAVA voters were limited to returning their voted ballots by U.S. mail or hand delivery.

Moreover, on January 4, 2012 (before the qualifying deadline of January 13, 2012) Secretary Chapman sent a memorandum to every county probate judge, circuit clerk (who normally acts as the Absentee Election Manager), and sheriff informing them of the deadline for transmission of UOCAVA ballots and explaining that, in counties where circuit clerks were opposed on the ballot, the circuit clerks would not be able to serve as the Absentee Election Manager. *See* January 4, 2012 Memorandum, attached as Exhibit B. The memorandum requested that, in such counties, the county appointing boards appoint replacement Absentee Election Managers and notify the Secretary's office. The memorandum further apprised the counties that the Secretary of State's office would provide two opportunities for training (on

January 20 and 21, 2012) consisting of two parts—a half day devoted to basic Absentee Election Manager duties for those who were new to the job, and specific training in the use of the electronic ballot transmission system put in place by Elections Systems & Software (ES&S) in partnership with SCYTL.

Nonetheless, in 2012, the State of Alabama and local election officials faced a vastly larger number of challenges with respect to UOCAVA compliance than were presented in 2010. Among those challenges were: the primary election date being moved from June to March, particularly insofar as this election year follows the 2010 census (the results of which were released in 2011), requiring redistricting and preclearance by the U.S. Department of Justice of the new lines; after the January 13, 2012 qualifying deadline, the Alabama Democratic Party and the Alabama Republican Party each amended their ballot certifications twice; in 2012, many county Boards of Voter Registrars had significant changes to their members, with some counties not retaining a single experienced voter registrar; changes in the Boards of Registrars' offices resulted in some counties having a delay in making required street file changes necessitated by redistricting to ensure that voters receive proper ballots; the State of Alabama contracted with a new vendor (ES&S) for electronic transmission of ballots, which resulted in having to construct new computer programming; and, finally, some county probate judges delayed getting their final ballots to ES&S for preparation of ballot styles and printing.

As of January 26, 2012, fifteen counties had not provided sufficient files to the vendor to enable the vendor to prepare proofs of the ballots. As of Saturday, January 28, 2012, four counties had not provided sufficient files for the vendor to begin layout and coding, and fourteen counties had not approved proofs of ballots provided by the vendor. In every instance, the

9

Secretary of State's office contacted the counties in question and urged local officials to take necessary steps to allow the vendor to print the ballots.

In response to these issues, the Secretary of State again extended the time for the counties to receive and count UOCAVA ballots by eight (8) days.[3] As in 2010, the Secretary of State's office contacted every county to determine the number of UOCAVA ballots that had been requested before the 45 day deadline and the actual date and means of transmission. After the primary election, her office will contact all counties to determine the status of all UOCAVA ballots to determine whether further steps are needed to ensure that all UOCAVA ballots are received and counted.

### *Future Efforts to Protect UOCAVA Voters*

As in 2010, the Secretary intends that UOCAVA voters who requested electronic transmission of absentee ballots be sent emails urging them not to delay in returning their voted ballots. If, based on continuing monitoring, the Secretary of State determines that the 8-day extension is not sufficient to ensure that all UOCAVA ballots transmitted after the 45-day deadline are counted, she is empowered to take the further remedial step of amending the ballot certification if said ballots are not received by the counties before the certification deadline. If necessary, she will do so, and it is not expected that this step would result in the delay of ballot preparation for the April 24, 2012 primary runoff election.

The rights of UOCAVA voters—like all Alabama voters—are being protected, and will continue to be protected.

---

[3] The Secretary disputes the United States' suggestion that her actions were instead in response to their phone calls to local officials.

## IV.	Information on the Level of Compliance with 42 U.S.C. § 1973ff-1(a)(8)

The chart attached hereto as Exhibit C contains information that was provided to the Secretary's office by local officials.[4]  Much of the data was provided in early February, and some has been updated this week.   The chart indicates that most counties were able to transmit their UOCAVA ballots by February 5, 2012, which is 8 days after the January 28, 2012 deadline.  This means that UOCAVA voters in these counties who had requested a ballot by the January 28, 2012 deadline will have 45 days to return their ballots as a result of the Secretary's remedial action in extending the deadline by 8 days.

The counties that the chart lists as transmitting ballots after February 5, 2012 are: Blount; Henry; Lauderdale; Lee; Limestone; Madison; Marshall; Monroe; Montgomery; Pickens; and Walker.  Additionally, the notes for Dallas County, DeKalb County, Jefferson County-Bessemer, Monroe County, Russell County and potentially Henry County indicate that some ballots have not been sent because the UOCAVA voter failed to specify whether s/he wanted the Republican primary ballot or the Democratic primary ballot.  The note for Choctaw County indicates that the ballot was not sent because "[a]pplicant now lives local and recently updated voter info," which suggests that the voter may no longer be within the scope of UOCAVA, which protects *absent* uniformed services voters, 42 U.S.C. § 1973ff-6(1), and overseas voters, 42 U.S.C. § 1973ff-6(5).

The State Defendants do not believe that Congress intended UOCAVA to require the State to make additional inquiries of the counties to gather the various information which the

---

[4]  The Secretary cannot attest to the accuracy of the information presented, and states only that this is the information provided to her by local officials.

United States has requested and which this Court has now ordered the State to file.[5] Nonetheless, given the Court's order, to demonstrate good faith, and without waiving any objections or intending to set any precedent, the Secretary of State has requested that local election officials complete the form attached hereto as Exhibit D, and return the completed form

---

[5] As noted during the February 28, 2012 conference call, the State Defendants disagree with the United States' assertion that it has identified a legal basis for its demands. The February 15, 2012 letter to an Assistant Attorney General, which demanded certain information be turned over by February 17, 2012, does cite two statutes—42 U.S.C. § 1973ff-4 and 42 U.S.C. § 1974b—but neither authorizes the demand. (Doc. 1-3 at 3).

Section 1793ff-4 authorizes the U.S. Attorney General to file suit for declaratory or injunctive relief to enforce UOCAVA, and requires that he report to the Congress on such litigation annually. 42 U.S.C. § 1973ff-4. It does not entitle the United States to make any demands for information outside the litigation process, or to engage in pre-suit discovery.

Section 1974b provides that the Attorney General may make a demand to the custodian of certain voting records that the records "be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." 42 U.S.C. § 1974b. The February 15 letter, by contrast, was addressed to counsel and demanded production of the documents nearly immediately. Moreover, it is doubtful that some or all of the documents at issue are within the scope of § 1974b.

Section 1974b only apply to "[a]ny record or paper required by section 1974 of this title to be retained and preserved." 42 U.S.C. § 1974b. In turn, § 1974 covers "all records and papers which come into [the custodian's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." By contrast, the United States sought to have the Secretary of State provide: "(1) the names of Alabama counties that did not meet the January 28, 2012 UOCAVA ballot transmission deadline for the March 13, 2012 primary election and the reasons for such delays, including the number of ballots affected in each county and the length of the delay at issue; (2) the facts underlying Secretary Chapman's decision to extend the UOCAVA ballot receipt deadline for the March [13], 2012 primary and publish the recent Notice to UOCAVA Voters; (3) all other steps the State has taken, or plans to take, to remediate the effect of the late transmissions of ballots to UOCAVA voters; (4) all steps the State will take to ensure UOCAVA compliance for any Federal primary runoff election that may occur on April 24, 2012; and (5) a copy of the State's written plan for UOCAVA compliance with respect to the April 24, 2012 Federal primary runoff, as required by 42 U.S.C. 1973ff-1(a)(9)." (Doc. 1-3 at 3).

Accordingly, any provision of the information that USDOJ seeks would have been entirely voluntary prior to this Court's order.

to her no later than 5:00 p.m. today. By the Court's deadline tomorrow, March 1, the State Defendant will update this response with the additional information received.

## V. Conclusion

As the Court can see, the State Defendants have closely monitored military and overseas voting and have taken steps to ensure that the rights of UOCAVA voters, like all of Alabama's voters, are protected. While we disagree with the Court's order, State Defendants are presently taking additional steps to comply with the order.

The injunction is not necessary, and that is an issue we will take up soon. It is not necessary because State officials are already ensuring that every vote will be counted. Those efforts are made more difficult – and UOCAVA voters are not helped – when the United States takes State officials away from their election duties to provide information the statute does not require.

Respectfully submitted,

LUTHER STRANGE (ASB-0036-G42L)
*Attorney General*

BY:

s/ James W. Davis
James W. Davis  (ASB-4063-I58J)
Misty S. Fairbanks  (ASB-1813-T71F)
*Assistant Attorneys General*

**OFFICE OF THE ATTORNEY GENERAL**
501 Washington Avenue
Montgomery, Alabama 36130
Telephone:   (334) 242-7300
Facsimile:    (334) 353-8440
jimdavis@ago.state.al.us
mfairbanks@ago.state.al.us

*Attorneys for the State Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 29th day of February 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record: Stephen M. Doyle, T. Russell Nobile, and T. Christian Herren, Jr.

I FURTHER CERTIFY that on the 29th day of February 2012, I have placed the foregoing in the U.S. Mail, first class, postage pre-paid, to:

Richard Dellhein
U.S. Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Avenue, N.W.
NWB-7254
Washington, DC 20530

Risa Berkower
U.S. Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Avenue, N.W.
NWB-7254
Washington, DC 20530

                                                s/ James W. Davis
                                                Of Counsel