# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-cv-00179-MHT-WC |
| | ) | |
| STATE OF ALABAMA and | ) | |
| HONORABLE BETH CHAPMAN, | ) | |
| Secretary of State, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF MONTGOMERY | ) |

## AFFIDAVIT OF SECRETARY OF STATE BETH CHAPMAN

1.      My name is Beth Chapman and I serve as the Secretary of State for the State of Alabama. I am currently in my second term in that office. I am over the age of 19, I am qualified to give this affidavit, and I have personal knowledge of the facts set forth herein.

2.      In my official capacity, I am a defendant in the above-styled lawsuit concerning UOCAVA voters. I understand that this affidavit is given in support of the State Defendants' statement that Court action is not necessary to protect the rights of UOCAVA voters in Alabama and that the District Court's temporary restraining order and preliminary injunction should be dissolved.

3.      In my view, court action is not necessary because I intend to continue to do everything in my power to ensure the UOCAVA voters can vote and that their vote is counted.

4.     Working up to the 2012 primary election, my office closely monitored local election officials in all counties.  If an issue came up that threatened the ability of local officials to transmit UOCAVA ballots by statutory deadlines, my staff and I took steps to encourage local election officials to timely complete their duties or to otherwise resolve the issue.  Unfortunately, some counties were late in transmitting ballots to UOCAVA voters.  I have already extended the deadline for UOCAVA voters to return ballots.  My staff and I will monitor the situation closely to determine if additional steps are needed, and if it is within the power of my office I will do what is necessary to ensure that UOCAVA voters are able to vote and that their votes are counted.

5.     This commitment is not made because of litigation, and a court order is not necessary for me to act within my power to protect voters' rights.  In fact, I have long worked to advance the interests of UOCAVA voters.

6.     Ensuring that military and overseas voters' ballots are counted has been a top priority of mine even before I became Secretary of State.  While serving as State Auditor, I began working with the Alabama Legislature to enact laws that would make it easier for UOCAVA voters' ballots to be counted.

7.     By early 2007, shortly after taking office as Secretary of State, I was pushing legislation that would allow for electronic voting for UOCAVA voters.  The legislation did not pass that year, and this initiative has been a continuing passion for me.  For instance, in June 2008, I hosted an open meeting on UOCAVA voting at the State Capitol.  After my office had sent out more than 3,000 requests for information, the Military and Overseas Voting Task Force—which I successfully lobbied Governor Riley to create *via* Executive Order and which I chair—invited the only three vendors in the world that performed internet voting to demonstrate

their capabilities.  In 2009, working with the Task Force, I pushed for legislation drafted in my office and modeled after Florida's successful pilot program in electronic voting to the military. In 2010, I applauded the change in federal law that required UOCAVA voters be permitted to receive their ballots electronically.

8.      In September 2007, I worked with the Federal Voting Assistance Program and the Department of Defense on a Public Service Announcement urging military personnel abroad to vote by absentee ballot.  The PSA was scheduled to air on the Armed Forces Networks, including the Pentagon Channel, over the next two months.

9.      In October 2007, in conjunction with The Pew Charitable Trusts and the Overseas Vote Foundation, I announced OVF's Web-based application for assisting UOCAVA voters. Alabama, along with Minnesota and Ohio, were the first States to use OVF websites to assist their UOCAVA voters.  In a statement the next month, I described the website this way: "The site guides overseas voters through state requirements, helping to complete and automatically check all information to ensure requests are not disqualified based on technicalities.  This straightforward technological solution is an important first step in protecting our service members' ability to vote." (paragraph break omitted).   The website is available today at https://alabama.overseasvotefoundation.org/vote/home.htm

10.      In March 2008, I hosted a conference devoted to the issue of improving military and overseas voters' access to ballots. Among the featured speakers at this conference were: Major General Mike Sumrall, Assistant to the Chairman of the Joint Chiefs of Staff for National Guard matters: Susan Dzieduszycka-Suinat, President and CEO of the Overseas Vote Foundation; and, USDOJ attorney Rebecca Wertz.

11.     I currently serve as the President of the National Association of Secretaries of State.  In April 2008, I testified before Congress' Committee on House Administration on military and overseas voting.  I did so as a representative of both the State of Alabama and the National Association of Secretaries of State.

12.     In July 2008, I announced the creation of the Veterans Who Vote Program, which was a partnership with the Veterans of Foreign Wars aimed at recruiting veterans to participate in the election process by registering voters, working at the polls, and serving as poll watchers for the 2008 General Election.  I have also repeatedly collected phone cards for members of the military.

13.     In September 2008, I participated as a panelist at The Pew Charitable Trusts' Military and Overseas Voting Summit and did an hour-long interview on military voting for C-SPAN.

14.     As noted above, throughout this time, I continued to push for legislative reform to help UOCAVA voters, repeatedly emphasizing that those who defend democracy should be permitted to participate fully in it.

15.     During the 2010 General Election cycle, I learned that there had been a delay in some counties in transmitting federal ballots no later than 45 days before the election.  To ensure that UOCAVA voters had sufficient time to receive and return their ballots, I implemented an emergency rule that is identical to the one I have implemented for the 2012 primary election.  In 2010, I extended the time for receiving and counting these voted ballots, and my office continuously monitored whether and when voted ballots had been returned to the county elections offices.  The extended timeline was announced in a press release and the Alabama National Guard agreed to send information on the change to all deployed commanders.  These

measures proved to be an effective way of ensuring that any UOCAVA voters whose ballots were not transmitted by the 45th day before the election had their votes counted.  USDOJ did not challenge these remedial measures in 2010.

16.     After the 2010 General Election and in light of the upcoming 2012 elections, I took additional steps to facilitate compliance with UOCAVA.

17.     In 2011, I was instrumental in getting the Alabama Legislature to enact Act No. 2011-619.  (The lead legislative sponsor of the Act was Senator Gerald Dial, a former Brigadier General in the Alabama National Guard.)  Among other things, this Act allows UOCAVA voters the additional means of returning voted ballots by commercial ground or air carrier.  Before Act No. 2011-619, UOCAVA voters were limited to returning their voted ballots by the slower methods of U.S. mail or hand delivery.

18.     Moreover, on January 4, 2012 (before the qualifying deadline of January 13, 2012) I sent a memorandum to every county probate judge, circuit clerk (who normally acts as the Absentee Election Manager), and sheriff informing them of the deadline for transmission of UOCAVA ballots and explaining that, in counties where circuit clerks were opposed on the ballot, the circuit clerks would not be able to serve as the Absentee Election Manager.  The memorandum requested that, in such counties, the county appointing boards appoint replacement Absentee Election Managers and notify my office.  The memorandum further apprised the counties that my office would provide two opportunities for training (on January 20 and 21, 2012) consisting of two parts—a half day devoted to basic Absentee Election Manager duties for those who were new to the job, and specific training in the use of the electronic ballot transmission system put in place by Elections Systems & Software (ES&S) in partnership with SCYTL.

19.     Nonetheless, in 2012, the State of Alabama and local election officials faced a vastly larger number of challenges with respect to UOCAVA compliance than were presented in 2010.  Based on my own knowledge and the reports of my staff, I can state that these challenges included:

a.     This election year follows the 2010 census (the results of which were released in 2011), requiring redistricting for many local offices.

b.     Some jurisdictions were delayed in finalizing their ballots to be printed because they were awaiting preclearance of redistricting lines by the U.S. Department of Justice.

c.     The fact that this election year follows the release of census results and that Alabama is subject to Section 5 of the Voting Rights Act was exacerbated by the fact that this is a presidential election year and the primary elections were recently moved to March in presidential election years.    In 2010, the primary was held in June.

d.     After the January 13, 2012 qualifying deadline, the Alabama Democratic Party and the Alabama Republican Party each amended their ballot certifications twice.

e.     In 2012, many county Boards of Voter Registrars had significant changes to their members, with some counties not retaining a single experienced registrar.

f.     There were changes in the Boards of Registrars' offices that resulted in some counties having a delay in making required street file changes necessitated by redistricting to ensure that voters receive proper ballots.    Moreover, the Alabama Supervisor of Voter Registration visited numerous county Board of Registration office to help them with the process of updating street files.

g.     The State of Alabama contracted with a new vendor (ES&S) for electronic transmission of ballots, which resulted in having to construct new computer programming.

h.     Finally, some counties delayed getting their final ballots to ES&S for preparation of ballot styles and printing, or delayed in approving proofs of ballots.

- As of January 26, 2012, fifteen counties had not provided sufficient files to - ES&S to enable the vendor to prepare proofs of the ballots.

- As of January 27, 2012, twelve counties had not provided all the necessary files to begin ballot layout and coding, and seven counties had not yet approved ballot proofs.

- As of Saturday, January 28, 2012, four counties had not provided sufficient files for - ES&S to begin layout and coding, and fourteen counties had not approved proofs of ballots provided by the vendor.

- As of January 30, three Counties had not turned in all required files to start layout and coding, and eight counties had not signed off on proofs.

- My staff contacted the counties in question and urged local election officials to take necessary steps to allow the vendor to print the ballots.

20.     As in 2010, my office contacted every county to determine the number of UOCAVA ballots that had been requested before the 45 day deadline and the actual date and means of transmission.

21.     Based on the results of those contacts, I again extended the time for the counties to receive and count UOCAVA ballots by eight (8) days.  Additionally, I had a notice posted on my office website alerting the public of the extension.  That notice provides: "NOTICE TO

7

UOCAVA VOTERS[.]    The Secretary of State has received information indicating that transmission of some UOCAVA ballots for the March 13, 2012 primary election has been delayed. Your ballot may be one of these. As a remedial action, the Secretary of State has extended the statewide deadline for receiving all UOCAVA ballots by eight (8) days to March 21, 2012, to ensure that all military and overseas voters have a full and fair opportunity to have their votes counted. Although the deadline has been extended, you are urged to return your voted ballot to your county absentee election manager as soon as possible to ensure its timely receipt. State law now allows UOCAVA ballots to be returned by U.S. mail, hand delivery, or commercial ground or air carrier." (emphasis deleted).  And, as in 2010, and at my request, the Alabama National Guard sent information about the change in deadline to all deployed commanders.

22.    I extended the deadline by 8 days Statewide in order to ensure that all UOCAVA voters were protected and to avoid any confusion that would result if I targeted the remedy to only those counties that had reported delays in transmitting their UOCAVA ballots.  As a result, some UOCAVA voters may have longer than 45 days to receive and return their ballots.  And, of course, the 45-day timeline is based on ensuring that UOCAVA voters who are receiving their ballots by U.S. Mail will have adequate time to receive and return their ballots.  As a practical matter, those who receive their ballots electronically should have their transmission time greatly reduced, and, thanks to Act No. 2011-619, UOCAVA voters also have the option of returning their voted ballots by methods other than U.S. Mail.  It should also be noted that not all UOCAVA voters are abroad; UOCAVA protects members of the military who are absent from their place of residence.  This means that some of Alabama's UOCAVA voters are likely stationed Statewide.

23.     As in 2010, I intend that UOCAVA voters who requested electronic transmission of absentee ballots be sent emails urging them not to delay in returning their voted ballots.

24.     After the primary election, my office will contact all counties to determine the status of all UOCAVA ballots to determine whether further steps are needed to ensure that all UOCAVA ballots are received and counted.  If, based on continuing monitoring, I determine that the 8-day extension is not sufficient to ensure that all UOCAVA ballots transmitted after the 45-day deadline are counted, I am empowered to take the further remedial step of amending the ballot certification if said ballots are not received by the counties before the certification deadline.  If necessary for any UOCAVA vote to be counted, if received within 45 days after transmittal, I will take this step of amending the certification.

25.     Thus, between the 8-day extension and the amended certifications, which can be done if necessary, UOCAVA voters are protected.  If a UOCAVA ballot is received within 45 days of the date it is transmitted, it will be counted and it will be reflected in the final vote totals, even if it takes amending the certification to make sure that happens (assuming, of course, that the ballot meets other state-law requirements).  I intend to provide follow-up notice that assures UOCAVA voters of these policies.

26.     Nor is judicial intervention needed for a run-off election, if in fact there is a run-off for any federal office.  My office will, as the statute requires, do what we can to ensure that counties transmit ballots to UOCAVA voters in a manner that gives them sufficient time to vote in the runoff election.

27.     If a runoff is held, it would take place 6 weeks after the primary election, and Alabama law provides that UOCAVA voters are afforded an extra week longer than other voters to return their ballots.

28.    In addition, I intend to instruct local election officials to transmit Federal Write-In Absentee Ballots to all persons who requested primary ballots and who live in a Congressional district with the potential for a primary run-off election.  I intend to instruct them to transmit those ballots, with appropriate instructions, on or before March 10, 2012.

29.    In the event of a runoff, my office will monitor UOCAVA ballot applications and transmittals and I will exercise my judgment to determine if further action is needed to protect UOCAVA voters.

Further affiant saith not.

_____
Beth Chapman, Alabama Secretary of State

Sworn to and subscribed before me on this the _3RD_ day of March, 2012.

_____
Notary Public
My Commission Expires:_____

My Commission Expires 9/27/2015

