# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 2:12-cv-179-MHT-WC |
| v. | ) | |
| | ) | |
| THE STATE OF ALABAMA and | ) | |
| BETH CHAPMAN, | ) | |
| SECRETARY OF STATE | ) | |
| OF ALABAMA, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## UNITED STATES' MEMORANDUM RECOMMENDING ENTRY OF ORDER GRANTING PRELIMINARY INJUNCTION

Pursuant to ¶ 3 of this Court's February 28, 2012 Order and Opinion, in which the Court sought recommendations as to appropriate next steps in this litigation, Plaintiff United States of America ("United States") respectfully recommends that this Court enter an order granting the United States' motion for preliminary injunction. *See* Op. & Order, Feb. 28, 2012, ECF No. 8, at 11; U.S. Mot. for TRO & Prelim. Inj., Feb. 27, 2012, ECF No. 5.  On March 1, 2012, Defendants provided the Court and the United States with data confirming widespread UOCAVA violations for the March 13, 2012 Federal primary election.  State Defs.' Second Resp. to Ct. Op. & Order, Mar. 1, 2012, ECF No. 12 [hereinafter "Def.' Second Resp."].   On March 2, 2012, counsel for the United States and Defendants conferred by telephone twice to discuss appropriate relief for those violations.  No agreement was reached, as the parties differed over the propriety of any additional judicial relief in this matter.   Accordingly, based on undisputed evidence of widespread and on-going harm to Alabama's UOCAVA voters that will remain unremedied

unless this Court acts, the United States urges the Court to enter the attached proposed order

granting preliminary injunctive relief.

I.      **BACKGROUND**

The United States filed this action on February 24, 2012, to remedy violations of the

Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §§

1973ff to 1973ff-7, as amended by the Military and Overseas Voter Empowerment Act,

("MOVE Act"), Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009).

The United States' complaint alleged that numerous Alabama counties failed to transmit

UOCAVA absentee ballots to voters at least 45 days prior to the State's March 13, 2012 Federal

primary election, as required by UOCAVA.  Prior to the complaint, Defendant Chapman had

publicly acknowledged late ballot transmissions and, as an attempted remedy, extended the

State's UOCAVA ballot receipt deadline by eight days.  At the time the United States filed the

complaint, however, the full extent of the problem was unknown because Defendants refused to

provide the United States with any information concerning affected ballots.

On February 27, 2012, the United States moved for a temporary restraining order and

preliminary injunction to remedy imminent disenfranchisement of Alabama's UOCAVA voters

caused by the late ballot transmissions.  U.S. Mot. for TRO & Prelim. Inj., Feb. 27, 2012, ECF

No. 5.  As an interim measure, the United States sought information from Defendants to

determine the full extent of the problem.

On February 28, 2012, this Court held an on-the-record conference with counsel for both

parties.  During the call, Defendants admitted that UOCAVA ballots were not timely transmitted

as required under UOCAVA.  Thereafter, the Court entered an order granting a temporary

restraining order which, among other things, directed the Defendants to provide the United States

with information necessary to determine the scope and severity of the harm generated by the

State's apparent UOCAVA violations.  It further directed the parties to confer as to the

appropriate relief for both the March 13, 2012 primary and April 24, 2012 primary runoff

elections.  Op. and Order, February 28, 2012, ECF No. 8, at 11.

On February 29, 2012, Defendants filed a Preliminary Response to the Court's Opinion

and Order.  State Defs.' Prelim. Resp. to Ct. Op. & Order, Feb. 29. 2012, ECF No.10 [hereinafter

"Defs. Prelim. Resp."].  In it, Defendants again admitted that absentee ballots were not timely

transmitted pursuant to UOCAVA.  *Id.*  Indeed, the Defendants included a chart they apparently

compiled prior to the filing of this lawsuit.  Defs.' Prelim. Resp., Ex. C, ECF No. 10-3.  That

chart indicates that the State knew of statewide UOCAVA violations before this lawsuit was

even filed, and that its eight-day extension of the ballot receipt deadline would not remedy those

violations for many Alabama UOCAVA voters.  *Id.*  Despite this evidence, Defendants defiantly

maintain that this lawsuit, and this Court's injunction, are unnecessary.  Defs.' Prelim. Resp., at

1.

The Defendants supplemented their Preliminary Response on March 1, 2012.  Defs.'

Second Resp.   The State's Second Response included UOCAVA ballot data from county

election officials gathered by Defendant Chapman's office through a questionnaire.  These

questionnaires confirm systemic UOCAVA violations far *worse* than the United States originally

alleged.

Specifically, the undisputed evidence now demonstrates that military and overseas voters

from 47 Alabama counties requested UOCAVA ballots on or before January 28, 2012.  Defs.'

Second Resp., Ex.1, Mar. 1, 2012, ECF Nos. 12-1, 12-2, 12-3, 12-4, 12-5 (providing completed

questionnaires from all Alabama counties).  Of these 47 counties, **all** failed to timely transmit

3

those timely-requested UOCAVA ballots by the 45-day advance transmission deadline, i.e.,

January 28, 2012.  *Id.*  Additionally, at least 15 and as many as 22 counties transmitted their

ballots after February 5, 2012—more than eight days after the January 28, 2012 transmission

deadline.[1]  *Id.*  The late transmissions from these 15 counties affected at least 256 ballots.

Further, the Defendants' data indicate that timely-requested UOCAVA ballots have been

transmitted as late as February 15, 2012 – 18 days after the transmission deadline.  *Id.*  There is

some indication at least one county may not have transmitted all of its ballots, despite receiving

timely ballot requests.   Defs.' Second Resp. Ex. 1, ECF No. 12-3 (questionnaire response for

Lee County).  In light of this, the State's eight-day ballot receipt extension will not afford

complete relief for all affected UOCAVA voters.

These violations mark the second consecutive Federal election in which Alabama failed

to transmit ballots in compliance with UOCAVA.  Defs.' Prelim. Resp., at 4 ("[i]t is undisputed

that some counties in Alabama missed this [January 28, 2012] deadline"); *id.* at 6 ("full

compliance is a difficult task, and Alabama was hardly alone in encountering difficulties in

2010").  Despite this repeated systemic failure, Defendants maintain that no additional relief

from this Court is necessary to protect UOCAVA voters, either in the March 13, 2012 primary

election or in any other Federal election.  Defendants further contend that any remedial relief

---

[1] The Court's Order directed Defendants to gather information from the counties as to the number of ballots that were requested by January 28, 2012 and transmitted after February 5, 2012.  The United States drafted an appropriate questionnaire for the Defendants to consider to obtain that necessary information.  The Defendants declined to use that questionnaire and instead distributed one of their own which, unfortunately, did not phrase this question as specifically as the Court directed.  While the Court's order instructed Defendants to find out the dates on which ballots requested by January 28, 2012 were transmitted, and the number of ballots transmitted on each date, Defendants' questionnaire only asked counties to provide "additional detail for each date after January 28, 2012, on which UOCAVA ballots were transmitted," without specifically requesting that this information be provided only for those ballots requested *by or before January 28.  See* Defs. Prelim. Resp., Ex. D, Feb. 29, 2012, ECF No. 10-4 (sample questionnaire).  Because of this, the data are clearer for some counties than for others.  The data Defendants provided conclusively show, however, that 15 counties transmitted ballots requested by January 28, 2012 after February 5, 2012, for a total of at least 256 ballots.  For an additional 7 counties, Defendants' data indicate that this may be the case, but further data must be gathered to confirm this and to clarify the number of affected ballots.

ordered by the Court would impose improper "extra-statutory obligations" upon Defendants. Def. Prelim. Resp., at 2.

The undisputed, overwhelming evidence of Defendants' systemic UOCAVA violations, justify the Court's February 28, 2012 Order, as well as additional, immediate relief.

## II.    LEGAL STANDARD

Four factors govern whether a preliminary injunction should issue:

(1)     whether there is a substantial likelihood of success on the merits;

(2)     whether the movant will suffer irreparable injury unless the injunction is issued;

(3)     whether the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4)     whether granting the injunction is in the public interest.

*See, e.g., Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 238 F.3d 1300, 1308 (11th Cir. 2001); *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000).  The Court found all four of these factors to be present when it granted the United States' motion for a temporary restraining order on February 28, 2012.  As the evidence supporting preliminary relief has grown significantly stronger in the intervening time, a preliminary injunction should now issue.

First, the United States has established pervasive UOCAVA violations.  Undisputed evidence provided by Defendants conclusively establishes that Alabama wholly failed to ensure the transmission of UOCAVA ballots by January 28, 2012.  A total of 47 Alabama counties received UOCAVA ballot requests by January 28, 2012, but **none** of those counties transmitted ballots by that date.  This violates UOCAVA by its plain terms.  42 U.S.C. § 1973ff-1(a)(8)(A). Accordingly, the United States is likely to succeed on the merits.

Second, given this widespread violation, immediate action by the Court is necessary to prevent affected voters' disenfranchisement.  Evidence provided by Defendants reveals that at least 15 (and as many as 22) counties transmitted at least 256 ballots UOCAVA ballots after February 5, 2012, more than eight days after the January 28, 2012 transmission deadline.  Defs.' Second Resp., Ex. 1, ECF Nos. 12-1, 12-2, 12-3, 12-4, 12-5 (providing completed questionnaires from all Alabama counties).  Because of this, the current eight-day ballot receipt deadline extension will not afford full relief to these voters.  As the Court's February 28, 2012 Order recognizes, affected voters "face imminent disenfranchisement, and thus irreparable harm, if immediate injunctive relief is not granted; each day that passes contributes to that harm, and the looming March 13 deadline makes swift, deliberate action necessary to counteract this harm." Op. & Order at 4-5.  Given that Defendants' current remedial efforts are insufficient for many affected voters across Alabama, further relief from the Court is necessary.

Third, any burden on Defendants is both minimal and far outweighed by the risk of harm to Alabama's UOCAVA voters.  As detailed in Section III below, the United States' respectfully seeks to (1) extend Alabama's ballot receipt deadline to give all UOCAVA voters 45 days to receive, mark, and return their ballots, (2) provide notice to affected voters of that deadline extension, (3) require transmission of Federal write-in absentee ballots to UOCAVA voters 45 days prior to the Federal primary runoff election scheduled for April 24, 2012, and (4) provide a report containing UOCAVA ballot data to the United States after the election.  The United States also seeks further reporting prior to the November 6, 2012 Federal general election to avoid similar UOCAVA violations in that election.  This relief is appropriately tailored to remedy Defendants' widespread violation of Federal law and is consistent with relief ordered by other courts to remedy UOCAVA violations.  *See United States v. New York*, No. 10-CV-1214,

(N.D.N.Y. Feb. 14, 2012) (ordering state to report detailed information about UOCAVA activity to the United States and the court), attached as Ex. A; Consent Decree, *United States v. New York*, No. 10-CV-1214 (N.D.N.Y. Oct. 19, 2010) (requiring, among other things, extensive publicity efforts to notify affected UOCAVA voters of remedial efforts), attached as Ex. B; *United States v. Guam*, No. 10-cv-25 (D. Guam Oct. 13, 2010), ECF No. 19 (granting United States' motion for preliminary injunctive relief, including 13 day extension of ballot receipt deadline and notice and reporting requirements), attached as Ex. C; *United States v. Wisconsin*, No. 10-CV-518 (W.D. Wis. Sept. 14, 2010; entered Sept. 15, 2010) (ordering 17-day extension of ballot receipt deadline), attached as Ex. D; *see also United States v. Cunningham*, No. 08-cv-709, 2009 WL 3350028, at *10 n.3 (E.D. Va. Oct. 15, 2009) (citing many United States District Court cases where an extension of the ballot receipt deadline had been entered as a remedy for a UOCAVA violation). This relief imposes minimal hardship on Defendants; to the extent Defendants argue otherwise, such burdens pale in comparison to the burdens borne by the Alabama UOCAVA voters facing imminent disenfranchisement.

Finally, as the Court's February 28, 2012 order recognized, "the public interest strongly favors enforcement of [UOCAVA voters'] rights by injunction under present, time-exigent circumstances." Op. & Order, at 5. As the time before the March 13, 2012 primary shortens and the evidence of Defendants' widespread UOCAVA violations grows, the public interest weighs ever more heavily in favor of granting the requested relief.

## III.   RECOMMENDED RELIEF

The United States respectfully requests that this Court enter the attached order granting preliminary injunctive relief to ensure that Alabama's UOCAVA voters are able to exercise their right to vote in the March 13, 2012 Federal primary election and the April 24, 2012 Federal

primary runoff election, if such an election is necessary.  Federal courts commonly grant this type of relief to remedy UOCAVA violations.  Nevertheless, the United States has sought carefully to tailor its requested relief to address the violations before this Court.

Provision (1) of the proposed order would further extend the State's ballot receipt deadline to ensure that validly-cast UOCAVA ballots are counted in the March 13, 2012 Federal primary.  This relief is commonly accepted by Federal courts to resolve UOCAVA violations. *See, e.g.*, *United States v. New York*, No. 10-CV-1214, (N.D.N.Y. Oct. 19, 2010) (consent decree extending ballot receipt deadline by 22 days to remedy late UOCAVA ballot transmissions), attached as Ex. B; *United States v. New Mexico*, No. 10-cv-968 (D.N.M. Oct. 14, 2010) (consent decree extending ballot receipt deadline by 4 days), attached as Ex. E; *United States v. Illinois*, No. 10-cv-6800 (N.D. Ill. Oct. 22, 2010) (consent decree extending ballot receipt deadline by 17 days), attached as Ex. F *; United States v. Wisconsin*, No. 10-CV-518 (W.D. Wis. Sept. 14, 2010; consent decree entered Sept. 15, 2010) (ordering 17-day extension of ballot receipt deadline), attached as Ex. D; *Cunningham*, 2009 WL 3350028 at *10 n.3.

Provision (1) of the proposed order also authorizes Defendants to certify the results of the primary provisionally where the number of outstanding ballots will not change the outcome of the primary.  This provision ensures that Defendants can still promptly administer any primary runoff, if necessary, without disenfranchising UOCAVA voters.  Due to the systemic nature of this failure, this relief is necessary to ensure the orderly administration of any possible Federal primary runoff without disenfranchising UOCAVA voters.  Federal courts have entered similar relief in other UOCAVA cases.  *See, e.g.*, *United States v. Tennessee*, No. 08-cv-85 (M.D. Tenn. Jan. 30, 2008) (consent decree), attached as Ex. G; *United States v. Connecticut*, 06-cv-1192 (D. Conn. Aug. 2, 2006) (stipulated agreement), attached as Ex. H.

Provision (2) directs Defendants to resolve unclear ballot transmission data in Lee County.  The questionnaire Defendants provided from Lee County indicate that some UOCAVA ballots may not have ever been transmitted.  If this is the case, provision (2) provides for emergency measures to transmit those ballots by express mail at Defendants' expense.

Provision (3) explains that in circumstances where local election officials receive more than one ballot from a UOCAVA voter due to the relief ordered by the Court (such as a mailed paper ballot and a subsequently downloaded ballot for the March 13, 2012 primary, or both a Federal write-in ballot and an official state ballot for the runoff), any conflict shall be resolved according to existing procedures under Alabama law.

Provisions (4), (5), and (6), would require Defendants to provide specific and general notice to UOCAVA voters and the public.  Provision (4) would require the Defendants to work with local election officials to provide specific notice to UOCAVA voters that they may receive their ballots via telefacsimile, electronic mail, or via the State's ballot delivery wizard, if they have not yet otherwise received them.[2]  This provision outlines the vehicles for providing this notice, and establishes that the notice shall include instructions to voters and explain the terms of this Order.  Federal courts have entered similar relief in response to violations of UOCAVA. *See, e.g.*, *United States v. New York*, No. 10-CV-1214 (N.D.N.Y. Oct. 19, 2010) (consent decree), attached as Ex. B.

Provision (5) would require the Defendants to notify the Director of the Federal Voting Assistance Program of the United States Department of Defense ("FVAP") of the entry of this Order and request FVAP's assistance in notifying military and other eligible voters of the relief

---

[2]  A ballot delivery wizard is an electronic system developed to give UOCAVA voters access to blank ballots through electronic download.

ordered in this matter.  Further, it would require Defendants to coordinate with FVAP to facilitate such notice, as necessary.

Provision (6) would require Defendants to provide general notice to the public and UOCAVA voters via an official press release by the Secretary of State.  Provision (6) specifies the substance of the press release and would require Defendants to distribute the press release to local, international, and military news organizations as well as organizations involved in promoting UOCAVA participation.  The organizations listed on the distribution list are organizations that appear to offer the best opportunity to reach affected voters.  For example, the requirement that the Defendants distribute the press release to local news organizations, including those serving military installations in Alabama, increases the chance that family and friends of UOCAVA voters may learn of this Court's order and bring it to the voters' attention. Federal courts have granted similar relief in response to violations of UOCAVA.  *See, e.g.*, *United States v. New York*, No. 10-CV-1214 (N.D.N.Y. Oct. 19, 2010) (consent decree), attached as Ex. B; *United States v. Wisconsin*, No. 10-CV-518 (W.D. Wis. Sept. 14, 2010; entered Sept. 15, 2010) (consent decree), attached as Ex. D; *United States v. Illinois*, No. 10-cv-6800 (N.D. Ill. Oct. 22, 2010) (consent decree), attached as Ex. F.

Provision (7) would require the Defendants to file a report with the Court concerning specific information following the March 13, 2012 Federal primary.  Generally, this report seeks information as to the number of UOCAVA ballots received by election officials before the March 13, 2012 Federal primary; the number of UOCAVA ballots received by election officials after the Federal primary but before March 31, 2012; and the number of UOCAVA ballots received by election officials after March 31, 2012; and the number of absentee ballots from

UOCAVA voters that were not counted in the primary for Federal office, for reasons other than late receipt, and the reasons such ballots were not counted.

Considering Defendants' systemic UOCAVA violations, the reporting requested in this provision is quite narrow.  Importantly, this report will enable the parties to evaluate the effectiveness of the remedial steps taken in this case.  Moreover, a Court-ordered report is necessary due to the Defendants' abject refusal since the MOVE Act was passed to provide information to the United States regarding the transmission of UOCAVA ballots.  This week the Defendants demonstrated their ability to gather and share reliable statewide UOCAVA information quickly – but unfortunately they did so only as a result of a Court order.

Provision (8) addresses the possibility of a Federal primary runoff on April 24, 2012. Specifically, this provision requires that Defendants transmit a blank Federal Write-in Ballot, candidate list, and detailed instructions to UOCAVA voters no later than March 10, 2012.  This provision ensures that a runoff ballot is transmitted to UOCAVA voters at least 45 days prior to the Federal primary runoff.  Further, this provision requires the Defendants to transmit to UOCAVA voters an official ballot following the final certification of the March 13, 2012 primary, and provides additional, necessary mechanisms for voters to acquire official ballots and to contact the State regarding any questions or confusion generated by the State's UOCAVA violations and its remedial efforts.

Provisions (9) and (10) address the United States' concerns regarding the November 6, 2012 Federal general election.  We now know that in the time since the effective date of the MOVE Act amendments to UOCAVA that require ballot transmission at least 45 days prior to Federal elections, Alabama has **never** complied with that deadline.  Preliminary injunctive relief

is necessary to protect UOCAVA voters and ensure that this systemic failure is avoided in the next impending Federal general election.

Provision (9) would require the parties to meet and confer prior to each remaining Federal election in 2012. Through this meeting, the United States hopes to work with the State to address any compliance problems in advance of UOCAVA's 45-day deadline, and to avoid the systemic failures of the two most recent Federal elections. Federal courts have granted similar relief in response to violations of UOCAVA. *See, e.g.*, *United States v. New York*, No. 10-CV-1214 (N.D.N.Y. Feb. 14, 2012) (order granting permanent relief), attached as Ex. A.

Finally, provision (10) requires the Defendants to provide pre-election reports to the Court and the United States about efforts to ensure UOCAVA compliance and UOCAVA ballot activity. The results of the questionnaire Defendants administered earlier this week revealed systemic failures that could have been anticipated and avoided if they had been disclosed in this type of pre-election reporting, such as the fact that many counties were unlikely to receive ballots from the printing company in time to meet the deadline. Given the compelling evidence of systemic UOCAVA violations before the Court, the pre-election reporting requirements in provision (10) are necessary to ensure that Defendants comply with their UOCAVA obligations and to ensure that any potential UOCAVA violations can be remedied at the earliest possible time to prevent any further disenfranchisement of military and overseas voters. *United States v. New York*, No. 10-CV-1214 (N.D.N.Y. Feb. 14, 2012) (order granting permanent relief), attached as Ex. A; *United States v. New Mexico*, No. 10-cv-968 (D.N.M. Aug. 1, 2011) (supplemental consent decree), attached as Ex. I; *United States v. Illinois*, No. 10-cv-6800 (N.D. Ill. Jan. 26, 2012) (supplemental consent decree), attached as Ex. J.

## IV.   CONCLUSION

For the forgoing reasons, the Plaintiff respectfully requests that this Court grant the United States' Motion for Preliminary Injunction and enter the attached proposed Order granting relief for the violations of UOCAVA described herein.[3]

Respectfully submitted,

Date:  March 3, 2012

---

[3] On March 3, 2012, Defendants moved to dissolve the Court's February 24, 2012 Order.  The United States opposes that motion, and reserves the right to file an appropriate memorandum of points and authorities in response.

GEORGE L. BECK, JR.
United States Attorney
Middle District of Alabama

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division


STEPHEN M. DOYLE
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7418

      /s/ T. Russell Nobile
T. CHRISTIAN HERREN JR.
RICHARD DELLHEIM
T. RUSSELL NOBILE
RISA BERKOWER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
NWB - 7122
Washington, D.C. 20530
Telephone:  (202) 307-1190
Facsimile:   (202) 307-3961
t.russell.nobile@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 2:12-cv-179-MHT-WC |
| v. | ) | |
| | ) | |
| THE STATE OF ALABAMA and | ) | |
| BETH CHAPMAN, | ) | |
| SECRETARY OF STATE | ) | |
| OF ALABAMA, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

<u>CERTIFICATE OF SERVICE</u>

        This is to certify that on March 3, 2012, a copy of the forgoing Motion and all accompanying documents, including exhibits and a proposed order, were filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for the Defendants.

        Misty S. Fairbanks
        James W. Davis
        Assistant Attorney General
        Constitutional Defense Division
        Office of the Attorney General
        501 Washington Avenue
        Post Office Box 300152
        Montgomery, Alabama 36130-0152
        Telephone: 334.353.8674
        Facsimile: 334.353.8440
        mfairbanks@ago.state.al.us
        jimdavis@ago.state.al.us


Date:   March 3, 2012                        */s/ T. Russell Nobile*
                                             T. RUSSELL NOBILE
                                             Department of Justice