IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    Plaintiffs,    v. THE STATE OF ALABAMA and JIM BENNETT, SECRETARY OF STATE OF ALABAMA, in his official capacity,    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )    CIVIL ACTION NO.    2:12cv179-MHT    (WO) |

OPINION

Plaintiff United States of America and defendants State of Alabama and Alabama Secretary of State have moved for the entry of a proposed remedial order resolving the claims asserted in this case, apart from a single legal issue to be addressed in a later opinion. The proposed order alters current state deadlines and requirements for federal elections under Alabama law to ensure the State will meet its obligations to absent military and overseas voters under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42

U.S.C. § 1973ff et seq.  The proposed changes would apply to all future federal elections in Alabama, including the next regularly scheduled primary on June 3, 2014.  For reasons explained below, the court, with some hesitation, accepts the parties' proposed remedial order.

## I. Background

Since 1986, UOCAVA has guaranteed military and overseas citizens ("UOCAVA voters") the right to vote by absentee ballot in all federal elections. 42 U.S.C. § 1973ff-1(a)(1). In 2009, Congress amended UOCAVA in the Military and Overseas Voter Empowerment Act ("MOVE Act"), Pub. L. No. 111-84, 123 Stat. 2190, 2318-35 (2009).  The MOVE act requires States to transmit absentee ballots to UOCAVA voters at least 45 days before an election for federal office. 42 U.S.C. § 1973ff-1(a)(8).  The MOVE Act's 45-day advanced-transmission requirement became effective for the 2010 federal general election and all subsequent elections.  Each State must ensure UOCAVA

compliance. 42 U.S.C. § 1973ff-1(a)(8); see also United States v. Alabama, 857 F.Supp. 2d 1236, 1238-39 (M.D. Ala. 2012) (Thompson, J.) (UOCAVA provides an "explicit statutory directive that Alabama bears full responsibility" for compliance).

This case arises from Alabama's failure to transmit ballots to its UOCAVA voters at least 45 days prior to federal elections.  Specifically, the State violated UOCAVA's 45-day advanced-transmission deadline in the last three regularly scheduled federal elections: the November 2, 2010, general election, the March 13, 2012, primary election, and the November 6, 2012, general election. The State does not dispute these violations.

Based on discovery conducted in this case and negotiations between the State and the United States, the parties agree that the State will be in a substantially better position to meet its UOCAVA obligations in future federal elections if changes are made to: (1) the State's statutory-election calendar; (2) the State's oversight of

3

local-election officials who are delegated UOCAVA responsibilities; (3) the training of local-election officials; and (4) the electronic ballot-transmission system. The parties' proposed remedial order addresses each of these areas for all future elections, including the 2014 federal election cycle.

The next federal election in Alabama is the primary election, scheduled for June 3, 2014. Under current Alabama law, the qualifying deadline for major-party candidates seeking to run in the primary election is April 4, 2014. 1975 Ala Code. § 17-13-5(a) (candidate-qualifying deadline is 60 days prior to the primary election). Under the parties' proposed remedial order, the candidate-qualification deadline would be 116 days prior to the primary election. Proposed Order (Doc. No. 110-1) at I.2. Therefore, under the changes proposed in the remedial order, candidates would have a new qualifying deadline of February 7, 2014, for the upcoming federal primary election. The State has argued that the qualifying-

deadline change, along with other deadline changes that follow the qualifying change, as proposed in the order is necessary for the State to comply with UOCAVA's 45-day advanced-transmission requirement.

The Alabama Education Association, a professional organization representing teachers and other employees of school systems in Alabama, moved for and was granted leave to appear in this matter as amicus curiae. The association has objected to the proposed remedial order on several grounds, including that the new candidate-qualification deadline drastically reduces, without sufficient prior notice, the time in which potential candidates have to qualify for the June 3 primary. It argues that, for this primary election only, the court should impose a remedial plan that allows more time for candidates to qualify.

II. Discussion

This case presents a classic instance of the dilemma Shakespeare identified: "rights by rights foulder." Coriolanus, Act IV, Scene 7.[*]  In other words, when two rights come into conflict, sometimes one must simply give way in whole or in part to the other.  In this case, the court is faced with two competing and compelling interests, and under these circumstances one must give way.

The first interest is the right to vote. In passing the MOVE Act to amend UOCAVA, Congress reaffirmed the critical importance of protecting the right to vote for members of the military and other citizens living overseas.  Remedial measures to ensure those citizens' right to vote are clearly necessary in this case.  The record before the court on a parallel motion for summary judgment amply demonstrates that the State of Alabama has

---

[*] "One fire drives out one fire; one nail, one nail; Rights by rights foulder, strengths by strengths do fail." Coriolanus, Act IV, Scene 7.

consistently and substantially violated UOCAVA's 45-day requirement.  The court is therefore firmly convinced that, absent the proposed remedial changes, including the qualifying-date change, the rights of UOCAVA voters would almost certainly be seriously and substantially compromised.

The second interest is that of potential candidates to run for nomination in the upcoming party primaries.  In this regard, the court is deeply troubled by the last-minute nature of this proposed remedy.  The plan in this case would alter the deadline to qualify for the June primary from April 4 to February 7, which would be a mere 21 days after the entry of this order and a mere 24 days after the parties first submitted this proposal to the court.  The court is concerned that potential primary candidates have likely relied on the April qualifying date in planning their fund-raising, employment (to extent they are government employees who may need to resign or take leaves of absence to run for office), and other matters.

Switching the date now, at the last minute, is at best unfair to them and at worst raises some constitutional concerns. Cf. Campbell v. Bennett, 212 F. Supp. 2d 1339, 1343-44 (M.D. Ala. 2002) (Thompson, J.) (finding, in the context of qualification for the general-election ballot, that "[t]he application of the new deadline, without fair notice of the new deadline and coupled with the short time before that new deadline was to expire" rendered it unconstitutional).

Nevertheless, the court is convinced that the second interest must give way to the first here.  First, while military and overseas voters' rights under UOCAVA are clear and certain, the question whether potential candidates' interests rise to the level of associational rights protected by the First Amendment appears to be an unresolved issue. See New York State Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008) (reserving the question of whether associational rights include "the right to run" in a party primary).  Second, to ameliorate any prejudice

resulting from the qualifying-date change, the State has represented to the court that the Secretary of State has already given public notice of the anticipated change in the form of a January 2, 2014, press release, and the State has also already given notice of the likely change to the political parties participating in the primaries.

Finally, the court cannot close without noting the very troubling concern that the reasons the State has given for the shortened time period might be pretextual, for the new deadline could be reasonably viewed as favoring incumbents (who have likely been privy to these proceedings and the potential settlement for some time, and who most likely already have the machinery in place to run) over challengers (who are less likely to have received timely notice of the proposed qualifying-date change).  However, there is no evidence to suggest that the State has acted pretextually in proposing the change to qualification deadline.  Indeed, the record reflects that the State agreed to this proposed remedial order only

after two years of contentious litigation and extensive negotiations conducted under the supervision of a magistrate judge.  Based on the history of this litigation, the court finds that the agreement, which contains that proposed qualifying-date change, was reached in good faith.

Therefore, the court will approve the parties' proposed remedial plan.  A separate order will issue.

DONE, this the 17th day of January, 2014.

    /s/ Myron H. Thompson
  UNITED STATES DISTRICT JUDGE