IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Case No. |
| ) | 2:12-cv-00179-MHT-WC |
| ) | |
| STATE OF ALABAMA and   ) | |
| HONORABLE JOHN H. MERRILL,   ) | |
| Secretary of State, in his official capacity,   ) | |
| ) | |
| Defendants.   ) | |

## STATE DEFENDANTS' MOTION
## FOR RELIEF FROM JUDGMENT AND ORDER

Pursuant to Fed. R. Civ. P. 60(b)(5) & (b)(6), the State of Alabama and the Alabama Secretary of State, defendants in this action, hereby respectfully move the court to vacate its injunction requiring that Alabama hold any federal runoff elections nine (9) weeks after the primary election, doc. 124 (Consent Order), doc. 127 (amended Consent Order), and to vacate its order that Ala. Code § 17-13-18 violates UOCAVA, doc. 121 (February 11, 2014 Judgment), doc. 152 (post-remand Order).  Alabama should be permitted to come into compliance with the court's interpretation of UOCAVA's 45-day advance transmission requirement through implementation of new legislation, namely Act No. 2015-518.  In support, the State Defendants say as follows:

1

1. The United States sued the State of Alabama and her Secretary of State alleging noncompliance with UOCAVA's 45-day advance transmission standard. Doc. 1.

2. Among other things, the United States alleged that the 45-day advance transmission standard applies to federal runoff elections. Doc. 1 at ¶¶ 13–19.

3. The State Defendants moved for summary judgment on the federal runoff elections issue, docs. 81 & 82, and the United States moved as to the entire case, docs. 83 & 84.

4. The parties settled the bulk of the litigation—everything but the federal runoff elections issue—and the court entered a remedial order. Docs. 110 & 117–119. On an unopposed Rule 60 motion, the court amended that order because Alabama enacted Act No. 2014-006, which eliminated the need for certain provisions. Docs. 126 & 128.

5. Thereafter, and following oral argument, the court held that the 45-day advance transmission standard applies to federal runoff elections. Docs. 120 (Opinion) & 121 (Judgment).

6. The court allowed the parties time "to propose or request any additional relief." Doc. 121 at 2.

7. The State Defendants filed an unopposed response explaining its preferred two-tier remedy:

If this Court intends to enter injunctive relief to ensure that runoff ballots are sent to UOCAVA voters at least 45 days before a runoff election, there are three general choices, each with disadvantages: (1) The Court could move the date of the federal runoff election to provide more time for ballot transmission; (2) it could authorize the use of election tools, such as ranked ballots (also known as an "instant runoff"), that would permit UOCAVA voters to receive ballots more than 45 days before a runoff election using the current schedule; or (3) it could declare that Alabama not use runoffs for federal elections and that a plurality of votes would henceforth be sufficient to win a primary.

It has been Alabama's policy, embodied in statute by the Alabama Legislature, that if no candidate receives a majority vote in a primary election, then the two candidates receiving the most votes will face off in a "second primary," or runoff, election. Ala. Code § 17-13-18. Thus, moving the date of the federal runoff (option 1 above) is arguably the most respectful of the State's policy choices.

However, this Court would be altering the dates of *federal* runoffs only (as this Court noted, UOCAVA applies only to federal elections, see Doc. 120 at 21-22, and state and local runoffs are not at issue in this litigation). State and local runoffs would remain governed by Alabama law and occur 42 days after the primary, while federal runoffs would occur a few weeks later. Because there is not likely sufficient time for the Alabama Legislature to move the dates of state and local runoffs for the 2014 election cycle to be synchronized with the federal runoff, voters in the 6th Congressional District could face having a runoff election for state and local races in mid-July and a runoff election for Congress in early August. That scenario could have a negative impact on voter turnout, cause voter confusion, impact candidates who are presently planning for a shorter runoff period, and burden election officials. There would also be a significant cost associated with holding an additional election on a separate date. If, however, the date of federal runoff elections were

> moved beginning in 2016, then the Alabama Legislature would have time to synchronize state and federal runoffs, or to make its own policy choices if it prefers a different remedy that is UOCAVA-compliant under the Court's reading of the statute. Hence, moving the federal runoff election back beginning in 2016 is the preferred long-term solution for a judicial remedy.
>
> The question then is what to do about the potential for a federal runoff in 2014. . . . The instant runoff system (ranked ballots) is too great a deviation from present policy choices for the State Defendants to suggest it as *permanent* relief, but in unique circumstances, such as the special election in the 1st Congressional District [in 2013], it can work well. In that special election, UOCAVA voters in the 1st Congressional District received a primary ballot that also served as their runoff ballot. UOCAVA voters ranked their choices among the candidates at the time that they voted in the primary, and officials in the Secretary of State's office counted UOCAVA ballots, resulting in zero UOCAVA violations in that election.

Doc. 122 at 2-4 (footnote and reference thereto omitted). The State went on to propose ranked ballots for 2014 only and pushing the federal runoff election back to nine (9) weeks after the primary for 2016 and beyond. *Id.* at 4-5.

8. The court adopted the State Defendants' proposal. Doc. 124; 127 (amended).

9. The State Defendants timely appealed. Doc. 129.

10. The Eleventh Circuit affirmed, *United States v. Alabama*, 778 F.3d 926 (11th Cir. 2015), and then denied rehearing *en banc*.

11. The Eleventh Circuit's judgment issued as mandate. Doc. 149.

12. This court then entered a new Order, doc. 152, reaffirming the February 11, 2014 Judgment. Doc. 152.

13. Accordingly, Alabama is currently enjoined to hold any federal runoff elections next year or thereafter on a different day than the State and county runoff elections are statutorily set to be held.

14. The Hon. John H. Merrill, Alabama's new Secretary of State, has led the charge to find a solution that does not require holding any federal runoff elections on a different date than the State and county runoff elections will be held. In so doing, he has worked with members of the Alabama Legislature and with the Governor's Office to ascertain which potential solution is most politically palatable to the State.

15. HB666 was introduced during the 2015 Regular Session. That bill would have provided for ranked ballots for all voters for federal runoff elections. It passed the House and was pending its third reading in the Senate when that Chamber adjourned.

16. A Special Session was subsequently convened, and HB29 was introduced. That bill provided for federal runoff elections to be conducted using ranked ballots for UOCAVA voters only.[1] Other voters would vote in person in any

---

[1] As this court is aware from its authorization of the use of ranked ballots for UOCAVA voters in the 2013 special election in the 1st Congressional District, doc. 71, and in the 2014 regular election in the 6th Congressional District, docs.

federal runoff elections six (6) weeks after the primary, or they could participate *via* standard absentee ballots.

17. HB29 passed the House 96 to 0, with 1 abstention. On August 10, 2015, HB29 passed the Senate with a vote of 25 to 3.[2] The next day, the undersigned notified counsel for the United States of HB29's passage.

18. On the afternoon of Friday, August 14, 2015, Governor Bentley signed HB29 into law. The next business morning, the undersigned notified the United States.

19. HB29 is now Act No. 2015-518.  A copy is attached hereto as Exhibit 1.

20. Act No. 2015-518 was effective immediately, *id.* at § 3, but can only be implemented if this court vacates its orders requiring that federal runoff elections be held nine (9) weeks after the primary – or – enters an order stating that vacatur is not a necessary precondition to Alabama implementing its new law, *id.* at § 2.

21. Rule 60 of the Federal Rules of Civil Procedure provides that "the court may relieve a party or its legal representative from a final judgment, order, or

---

124 & 127, the ranked ballots allow UOCAVA voters to rank the candidates in order of preference with the top-ranked candidate receiving the vote in the primary and the highest-ranked candidate to reach the runoff election receiving the vote in that election.

[2] The roll call votes are available at http://alisondb.legislature.state.al.us/Alison/SESSBillResult.ASPX?BILL=HB29&WIN_TYPE=BillResult, *last visited* August 21, 2015.

proceeding" if "(5) . . . applying [the judgment] prospectively is no longer equitable; or (6) [for] any other reason that justifies relief." Fed. R. Civ. P. 60.

22. The Supreme Court has explained that Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change in either factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (*quoting Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 384 (1992)).

23. According to the *Horne* Court, "Rule 60(b)(5) serves a particularly important function in . . . institutional reform litigation." *Horne*, 557 U.S. at 447 (internal citations, quotation marks, and footnote omitted).

24. Such injunctions "often remain in force for many years, and the passage of time frequently brings about changed circumstances . . . that warrant reexamination of the original judgment." *Horne*, 557 U.S. at 447-48. By its terms, the court's injunction altering the State's election scheme will remain in place indefinitely.

25. The *Horne* Court recognized that public officials sometimes consent to more than the law requires and should not be permitted to tie the hands of future public officials. 557 U.S. at 448-49. While the State Defendants did not

consent to more than the law required here, they recognized that there were different solutions for the problem at hand and chose the one that seemed most appropriate to be imposed during the course of litigation. Doc. 122 at 2-4 (quoted above). In so doing, they specifically recognized the possibility that the State Legislature might choose a different solution. *Id.* at 4. Now, the new Secretary of State, the Legislature, and the Governor have united behind ranked ballots for UOCAVA voters, with the federal runoff elections returning to the date on which State and county runoff elections will be held.

26. The *Horne* Court also recognized that "institutional reform injunctions often raise sensitive federalism concerns." *Horne*, 577 U.S. at 448. The importance of federalism in the present context cannot be denied. Alabama is a sovereign State constitutionally entrusted to run federal elections pursuant to its own rules and regulations except to the extent that Congress alters the "Times, Places and Manner" of House elections or the "Times" and "Manner" of Senate elections. U.S. Const. Art. I § 4, cl. 1. To require the State to hold any federal runoff elections nine weeks after the primary election when the State has now clearly expressed a preference to instead recombining the State, county, and federal runoffs and accommodating UOCAVA voters through the use of ranked ballots cannot be justified unless this court were to believe the accommodation inadequate to comply with federal law.

27. On that point, the State Defendants note that other States are using ranked ballots for UOCAVA voters to achieve 45-day advance transmission for federal runoff elections.

28. After this court ruled that the 45-day advance transmission deadline applies to federal runoff elections, the United States wrote to Mississippi, citing the decisions from this court and the Georgia district court, arguing that Mississippi was out-of-compliance because it held runoff elections three weeks after the primary. Letter from T. Christian Herren, Jr., Chief, Voting Section, U.S. Dep't of Justice, to Delbert Hosemann, Miss. Sec'y of State (March 5, 2014). On information and belief, Mississippi responded by sending UOCAVA voters a ranked choice ballot for the runoff, in addition to the regular primary ballot, for the 2014 elections. The State did the same for a special election earlier this year.

29. Arkansas holds a preferential primary election and then, if needed, a general primary election three weeks later. Ark. Code Ann. § 7-7-202, Ark. Code Ann. § 7-7-203. In the event of a tie in a Congressional race at the general election (not the general *primary*, but the general), it holds a runoff three weeks after the general election. Ark. Code Ann. § 7-5-703(c). The State sends UOCAVA voters a standard ballot as well as a ranked choice ballot for races for which there could be a runoff. Ark. Code Ann. § 7-5-406(c). The

ranked choice ballot is also known as a pink ballot, and is only opened if there is a runoff, Ark. Code Ann. § 7-5-416(f).

30. "In South Carolina, a candidate must receive more than 50% of the vote in a primary to win a party's nomination.  If no candidate receives more than 50% of the vote, a primary runoff is held two weeks later between the top two candidates.  In many cases, two weeks is not enough time for military and overseas citizens to receive and return a traditional absentee ballot.  To solve this problem, all military and overseas citizens receive an IRV ballot with their primary ballot." Instant Runoff Voting (IRV), *available at* http://www.scvotes.org/2008/08/11/military_overseas_citizens, last visited August 21, 2015.  *See also* S.C. Code Ann. § 7-13-40 (schedule); 2015 South Carolina Laws Act 79 (H.3154).[3]

31. Louisiana uses terminology that could be confusing and so requires a bit more discussion.  An appropriate starting point is *Foster v. Love*, 522 U.S. 67 (1997).  The Supreme Court held that Louisiana did not comply with 2 U.S.C. § 1[4] and 2 U.S.C. § 7[5] when it held an open primary in October and a general

---

[3]   The relevant portion of the Act is at the discussion of S.C. Code Ann. § 7-15-650, but citing directly to that statute is not currently returning the statute in WestlawNext.

[4]   2 U.S.C. § 1 provides: "At the regular election held in any State next preceding the expiration of the term for which any Senator was elected to represent such State in Congress, at which election a Representative to Congress

election in November; the problem was that candidates could prevail in October with no further action taken on the statutorily set Congressional election day. Today Louisiana holds its open primary in November and, if needed, the general election—which the State Defendants would call a runoff since it can have candidates from the same parties contesting the same race and since it is only held if needed—is held on the fifth Saturday thereafter. La. Rev. Stat. Ann. 18:402(b). Louisiana uses ranked ballots for UOCAVA members to allow them to participate in the second election; the ranked ballots are called special absentee ballots and are in addition to the regular ballots for the initial election. La. Rev. Stat. Ann. 18:1306(A)(4); La. Rev. Stat. Ann. 18:1308(A)(2); La. Rev. Stat. Ann. 18:1308.2.

32. Accordingly, four other States use ranked ballots for UOCAVA voters to achieve 45-day advance transmission for federal runoff elections.

33. Alabama's decision to implement ranked choice ballots for UOCAVA voters to facilitate participation in any Congressional primary runoff elections in

---

is regularly by law to be chosen, a United States Senator from said State shall be elected by the people thereof for the term commencing on the 3d day of January next thereafter."

[5]   2 U.S.C. § 7 provides: "The Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter."

compliance with this court's determination that 45-day advance transmission is required, while maintaining its statutorily set election schedule, should be respected.

34. As of yet, counsel for the United States has not been able to provide the undersigned with a statement of the United States' position. The United States does want to have the opportunity to respond to this motion.

* * *

For the foregoing reasons, the State Defendants respectfully move the court to vacate its injunction requiring that Alabama hold any federal runoff elections nine (9) weeks after the primary election, doc. 124 (Consent Order), doc. 127 (amended Consent Order), and to vacate its order that Ala. Code § 17-13-18 violates UOCAVA, doc. 121 (February 11, 2014 Judgment), doc. 152 (post-remand Order).  Alabama should be permitted to come into compliance with the court's interpretation of UOCAVA's 45-day advance transmission requirement through implementation of Act No. 2015-518.  If the court agrees, then any federal runoff elections – like any State and county runoff elections – will be held six (6) weeks after the primary election, pursuant to Ala. Code § 17-13-18, and UOCAVA voters will receive ranked ballots in advance of the primary to facilitate their participation in both the primary election and any federal primary runoff election, pursuant to Act No. 2015-518.

Respectfully submitted,

LUTHER STRANGE (ASB-0036-G42L)
*Attorney General*

BY:

s/ Misty S. Fairbanks Messick
James W. Davis  (ASB-4063-I58J)
Misty S. Fairbanks Messick  (ASB-1813-T71F)
*Assistant Attorneys General*
**OFFICE OF THE ATTORNEY GENERAL**
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone:   (334) 242-7300
Facsimile:   (334) 353-8440
jimdavis@ago.state.al.us
mmessick@ago.state.al.us

*Attorneys for the State & Secretary Merrill*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of August, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Victor J. Williamson
Amanda Hine
Anna Baldwin
Elizabeth M. Ryan
Erin M. Velandy
Ernest McFarland
Richard Dellheim
Spencer R. Fisher
Stephen M. Doyle
T. Christian Herren, Jr.
    *for the United States*


J. Cecil Gardner
Robert D. Segall
Sam Heldman
Edward Still
    *for the amicus*

                          s/ Misty S. Fairbanks Messick
                          Of Counsel